## BUTLER *et al. v.* COLLINS.

The ownership of goods is not changed when the claim to such ownership is based on a fraudulent contract.

Where the defendant, intending to deceive the plaintiff, got from him a bill of sale for goods under the representation that it was only to serve as a temporary security for the compliance by the plaintiff to furnish certain securities on previous indebtness, and *at this time* intended to refuse to receive such security, or give plaintiff the advantage of such new contract, the possession of such goods thus obtained was fraudulent, and the bill of sale is void.

It is as much a trespass to take possession of goods under such circumstances, as it is to take possession of goods without color of contract. It is the using the form of a contract as a covering for the wrongful taking of another's property, and it divests such possession of every attribute of a sale.

In cases of fraud, subsequent acts are frequently resorted to for the purpose of showing antecedent fraud. Fraud being proven, in reference to the transaction under question, the criminal intent is necessarily a matter of inference for the jury. The dealing with property to-day by the vendor, as his property, is evidence to show the fraud committed in a sale a month ago. The subsequent acts are illustrative of the intent and character of the first.

In such case, the plaintiff cannot recover the value of the goods and also the profits which might have been made on their sale ; hence, the testimony of a witness who, after examining the sale books of the plaintiff, based his calculation of the loss sustained upon an estimate of the profits (according to the previous rates) which might have been made but for the trespass, is improper, and should not have been allowed.

APPEAL from the Sixth District, County of Sacramento.

The facts appear in the opinion of the Court.

*J. H. McKune* for Appellant.

1st. The action brought sounds in tort, the complaint charging a wrongful and unlawful taking, when the case proved shows that if any wrong was done the remedy can only be sought in an action for a breach of contract. Andrews *v.* Bond, 16 Barber, 633.

2d. The Court erred in overruling a motion for nonsuit, because the case made by plaintiff showed a taking with and by the written consent of plaintiff. 1st Greenleaf's Evidence, sec. 51 ; Bristow *v.* Wright, 1st Smith's Leading Cases, 324 and notes.

3d. The Court erred in allowing witness Bradford to testify, from books shown him, as to what he thought a business capital of $7,000

would enable plaintiffs to clear.   1st Greenleaf's Evidence, sec. 441;
Sedgwick on Damages, 64, 65, 69, 2d edition ; Flureau *v.* Thornhill,
2d W. Blackstone, 1078 ; *In re* Schooner Lively, 1st Gallison, 314,
325 ; The Anna Maria, 2d Wheaton, 327 ; Delcol *v.* Arnold, 3 Dal-
las, 333 ; Boyd *v.* Brown, 17 Pick. 543 ; Smith *v.* Condy, 1st How-
ard, 28 ; Blanchard *v.* Ely, 21st Wend. 342 ; Freeman *v.* Clute, 3d
Barb. S. C. R. 424 ; Thompson *v.* Shattuck, 2d Metcalf, 615 ; Don-
nel *v.* Jones, 17 Alabama, 689 ; Muldrow *v.* Norris, 2d Cal. Rep. 74.

4th. The Court erred in refusing to give the instructions asked by
defendant.   Revised Statutes, p. 201, sec. 15.

5th. The Court erred in giving the instructions.   Hayden *v.* Cabot,
17 Mass. 169 ; Bishop *v.* Williamson, 2d Fairfield, 504; De *v.* Wag-
ner, 19 J. R. 241; Dorwin *v.* Potter, 5 Denio, 306 ; Hargous *v.*
Alen, 5 Hill, 493.

The damages restricted in this case as in contract.   Sedgwick, 82.

Witness not to give his opinion.   Sedgwick, 589 ; Doolittle *v.* Eddy,
7th Barb. S. C. R. 256 ; Giles *v.* O'Toole, 4 Barb. S. C. R. 261;
Fish *v.* Dodge, 4 Denio, 311 ; Norman *v.* Wells, 17 Wendell, 137,
161 ; Fish *v.* Dodge, 4 Denio, 311, 318 ; Shepherd *v.* Willis, 19
Ohio, 142 ; 23 Wend. 431; 17 Wend. 161 ; 24 Wend. 668 ; 21
Wend. 342 ; Page *v.* Hazan, 5 Hill, 603 ; Lincoln *v.* S. & C. R. R.
Co., 23 Wend. 425.

*Long, Robinson, Beatty & Heacock* for Respondents.

1st. The question of fraud was submitted to the jury on a charge
which is clearly right ; it is lucid and concise, and clearly directs the
jury to the points to be by them considered.   In such a case, the
Court ought not to disturb the verdict, if there is any reasonable
amount of evidence to sustain the finding of the jury.   See the follow-
ing authorities :  Payne *v.* Jacobs, 1st Cal. Rep. 39 ; Perry *v.* Coch-
ran, 1st Cal. Rep. 180 : 3d Graham on New Trials, pp. 1218 and
1260.

If the bill of sale were obtained by a preconcerted fraud, it was no
more than a piece of blank paper.   It was void for two reasons :  1st.
A bill of sale without an actual delivery, or before the delivery is com-
pleted, if obtained by fraud, may be repudiated.   The party having

the bill would not have had the actual possession, because of the want of complete delivery.    The law would not find a constructive possession on a fraud.    Nay, even if the delivery had been perfect, the fraud would avoid the whole transaction, and trespass would lie the same as though the goods had been taken by force.    See the following authorities : Ash *et al. v.* Putnam, 1st Hill, 302 ; Cary *et al. v.* Hotailing *et al.*, 1st Hill, 311 ; Olmstead *et al. v.* Hotailing *et al.*, 1st Hill, 317.

If a man were to hire a horse, declaring his intention to go to Marysville, but afterwards should start directly for Stockton, and there sell the horse, surely the hirer of the horse might show the declarations of the party at the time he hired the horse—that he was going to Marysville—that he did not go there, or even start for there, but immediately went to Stockton, and there sold the horse, etc., etc.

The hiring of the horse was an innocent act, if done with the intention to ride to Marysville, but the subsequent conduct could be introduced in evidence to show his original intent.    If that subsequent conduct should convince a jury that the hiring was a mere pretext, and that the intent to steal the horse existed, they would be compelled, under such a state of facts, to find the pretended bailee guilty of larceny, and no Court would set the verdict aside.    See Wharton's Amer. Crim. Law, (4th ed.) page 1845.

How much less testimony is required in a civil case.    We refer to the following cases, in which the Courts of Chancery have decided transactions to be fraudulent on circumstantial evidence, where all the direct evidence showed the transaction to be honest: Enders and Hynes *v.* John and Joshua Swayne, 8th Dana, 103 ; Doss *et al. v.* Tyack *et al.*, 14th Howard, 297.

We maintain that these cases 'are not stronger than the one at bar. But we have the verdict of a jury.    That verdict was approved by the Judge in the Court below, who heard all the testimony, and had an opportunity of seeing the witnesses confronted with the parties in open Court.    Where the question of fraud is fairly submitted to a jury, the facts are, by the Judge below, clearly submitted, which must constitute fraud.    Where the jury under such circumstances finds the fraud, the Court below approves—and the examination of the witnesses has been oral and not by deposition—it appears to us that the case ought

to be extremely barren of testimony tending to prove fraud, before this Court would overrule it.

2d. The next most serious question in the case is, as to whether Bradford's testimony, as to the probable profits of such a business as the plaintiffs were engaged in.

This is a case which comes within the rule as to the allowance of the opinion of experts. Bradford was a hat merchant, and an expert. That his testimony as such was properly admissible, we refer to the rule as laid down in 1st Greenleaf on Evidence, sec. 440. See, also, in regard to the evidence and rule of damages, the case of Suydam et al. v. Jenkins, 3d Sandford's Rep., pages 614 and 622.

BALDWIN, J., delivered the opinion of the Court — FIELD, J., concurring.

This suit was brought by the plaintiff to recover damages of the defendant as for a trespass and conversion of goods.

In July, 1856, the defendant, Collins, sold a stock of goods for $8,000 and upwards. Butler & Co. were to pay fifty dollars per week until the price should be paid, and one per cent. per month interest. Some time afterwards, Collins made an arrangement with the Butlers, whereby they agreed to give him their notes, with sureties on a part of them, payable in instalments, from five to eleven months after date, with interest at two per cent. per month. The particulars and the explanation of this arrangement changing the terms of the original agreement, which seems to have been more favorable to the plaintiffs than this substituted agreement, are not disclosed. Before the execution of the new notes, E. J. Butler executed and delivered to Collins a bill of sale of the goods; and the respondents contend that this was done, and the paper was to serve merely as security that the Butlers would complete this arrangement by the execution of the notes with the sureties. After the execution of the bill of sale by E. J. Butler, one J. H. Monell was put in possession as receiver or as agent for Collins; the respondents remaining in the store, and selling the goods, and keeping the key—Monell keeping the key of the money drawer. This state of things continued from the twelfth of December to the eighteenth, when Collins expelled the Butlers from the store, against

Butler *v.* Collins.

their will, assumed the entire ownership and dominion of the goods, and afterwards sold and delivered them to one Lamott.

The case was tried by a jury, who found for the plaintiffs.

On the trial, the main matter of fact in debate seems to have been whether this arrangement in respect to the execution of the bill of sale and the qualified possession of Collins, was or was not procured by fraud ; the plaintiffs contending that if this were the case, then that the defendant was in the condition of an original trespasser.

The legal proposition above asserted is correct.   The ownership of goods is not changed when the claim to such ownership is based upon a fraudulent contract.   If Collins, intending to deceive Butler, got from him a bill of sale under the representation that it was only to serve as a temporary security for the compliance by the Butlers with their engagement to give him certain sureties on the previous indebtedness, and *at this time* intended to refuse to receive or give him the benefit of this new contract ; in other words, if the possession of the goods and the bill for them were procured by falsehood and deceit, such bill of sale was void and such possession was unlawful.   It would be really a procuring of the goods and bill of sale upon false pretenses.   In such cases it is well settled that the party can take no benefit from his fraud. It is as much a trespass to take possession under such circumstances as without color of contract.   The question is not, when the possession is fairly obtained, whether a fraudulent failure to comply with the contract—which is the consideration of such possession—avoids the sale or makes the original taking tortious ; but the point is, that an original fraudulent design, characterizing and entering into the contract at its inception—which fraudulent design in this case is alleged to be to use the form of a contract as a covering for a wrongful taking of another's property—is sufficient to divest such possession of every attribute of a sale, and to put the pretended vendee in the same condition as if he had taken the goods without the pretense of sale.   On reason and authority we think this proposition is law.   Cary *v.* Hotailing (1 Hill, 311) is in point.   The learned judgment of Mr. Justice Cowen in this case, relieves us of the necessity of doing more than quoting a portion of his opinion to show that the principle, as we have stated, is sustained by the highest authority :  · " The general doctrine is perfectly settled

that fraud avoids a contract of sale." (Bristol v. Wilsmore, 1 Barn. & Cress. 514; Kelly v. Wilson, 1 Ryan & Moody, 178; Root v. French, 13 Wendell, 570.) These were all cases of buying goods with a preconceived design of not paying for them. In the first, Abbott, Ch. J., said: It prevented the property passing." In the second, he said the same thing. And in Root v. French, Savage, Ch. J., states the same rule, but suggests a distinction as to the remedy, which was not in the case, and which, on more reflection, I am sure he would have repudiated. McCarty v. Vickery (12 John. R. 348) on *certiorari* from a Justice's Court, decides that trespass will not lie in such a case, and even adds that the property is changed. But no case is cited, nor any principle or analogy mentioned on which to rest either proposition. And there are numerous cases to the contrary. That the property does not pass, I add to the cases already cited the following : Allison v. Mathieu, 3 John. R. 235, 8 ; Van Klief v. Fleet, 15 *Ib.*, 147, 151 ; Buffington v. Gerrish, 15 Mass. R. 156 ; Abbotts v. Barry, 5 Moore, 98, 102 ; Lupin v. Marie, 2 Paige, 169 ; Andrew v. Dieterich, 14 Wendell, 31 ; Mourey v. Walsh, 8 Cowen, 238 ; Tamplin v. Addy, *Ib.* 239, note ; Putnam, J., in Badger v. Phinney, 15 Mass. R. 364 ; Irving v. Motley, 7 Bing. 543 ; 5 Moore & P. 380, S. C. All these cases hold, in terms, what was asserted by Dallas, Ch. J., in Abbotts v. Barry, viz.: "The sale being effected by fraud, it is clear that a sale of this description works no change of property. The wares must be considered as remaining in the plaintiffs as the original owners." This being so, the civil remedies of the party defrauded are clear, viz., trover or replevin in the *detinet* or trespass, or replevin in the *cepit*, at his election. Trover will lie without demand and refusal, because the original taking is tortious. (Thurston v. Blanchard, 22 Pick. 18, 20.) I admit that Buffington v. Gerrish speaks nothing in favor of the remedy, as for a trespass; because, although the action was replevin, this has long since been holden in Massachusetts to lie for a mere unlawful detention. (Badger v. Phinney, 15 Mass. R. 359 ; Baker v. Fales, 16 *Ib.* 149, 150, and cases cited at the last page ; Marston v. Baldwin, 17 *Ib.* 606.) But for the purposes of the civil remedy, however it may be with the criminal, on the distinction between bailment and sale, the cases, with the exception

of McCarty *v.* Vickery, are all one way, if we take the point as estab-
lished, that neither works any change in the property of the goods.
The general and absolute ownership still remains in the vendor or
bailor ; and not only the original interference with the property, on the
part of the vendee or bailee, but any subsequent acts of ownership on
his part, may be considered as an unlawful or tortious taking.  (Put-
nam, J., in Badger *v.* Phinney, 15 Mass. R. 359, 364, and in Baker
*v.* Fales, 16 *Ib.* 147, 150.)   The general owner holds the construct-
ive possession of personal property ; and this is sufficient to maintain
trespass, though the actual possession be in another.  (Putnam, J., *ut
supra ;* Putnam *v.* Wiley, 8 John. R. 432 ; Thorp *v.* Borling, 11 *Ib.*
285 ; Aiken *v.* Buck, 1 Wend. 466 ; Root *v.* Chander, 10 *Ib.* 110.)
It is said that the owner consented to the taking ; and, were that so,
it would undoubtedly be a sufficient answer.  But consent, in law, is
more than a mere formal act of the mind.  It is an act unclouded by
fraud, duress, or sometimes even mistake.  Putnam, J., *ut supra*, 15
Mass. R. 364 ; Poth. obl. pt. 1, ch. 1, sec. 1, pl. 19.

This being the rule, it only remains to inquire whether the facts of
this case have any application to it.  We have already indicated the
general history of the case.  But it is necessary to show the facts more
in detail.

The Court below refused to charge the jury " that the evidence does
not show any such fraud as will entitle the plaintiff to recover in this
action."

It seems that both parties requested the Court to charge the jury
what would be fraud, and the Court accordingly did instruct the jury
in this respect, as follows :   " That if they believe the defendant Col-
lins had practiced fraud and deceit in getting into the store ; that he
had deceived plaintiffs in inducing them to execute the bill of sale, tell-
ing them it was a mere matter of form ; that he had promised to take
the promissory note as alleged by the plaintiffs, yet, at the time he so
promised, he did not intend to keep the same, but was fraudulently
intending to deceive the plaintiffs, so as to enable him to obtain the
possession of the goods, and then forcibly keep possession of the same—
that these acts were fraudulent."   This instruction, upon the hypoth-
esis of fact assumed, was strictly correct with the doctrine above laid

down, and so amply supported by authority.   If such acts as these are not in law fraudulent, then the law has a system very widely different from any code of ethics ever before promulgated among civilized men.

The only objection which could be urged against this instruction, and the denial of the one refused, is, that there was *no* evidence *tending to prove the fraud ;* and the objection involves the questions on the motion for a new trial.   In passing upon such questions, as we have had occasion so often to say, we do not sit as a jury.   We do not profess to try questions of fact on appeal, after verdicts or findings.   We only interfere to prevent obvious and palpable injustice arising from a glaring abuse of the discretion of the Court below in refusing to set aside a verdict when it is without any, or has a clearly insufficient foundation in the evidence.   Was there, then, *any* evidence conducing to show that this fraud had been committed ?  or, if any, was that evidence so slight as to create no serious doubt of the innocence of the parties inculpated ?

The proofs in cases of fraud are usually circumstantial.   Frauds are a species of the *crimen falsi*, which, like larceny, are not done openly. They are usually shown as inferences from facts established, rather than as facts expressly proven.   We will look to the character of the transaction, not for the purpose of proving this imputed fraud, but for the purpose of ascertaining whether there was any proof worth weighing of its existence.

Looking to the nature of this transaction, it is scarcely to be supposed that the Butlers would be willing to exchange the contract they had made for one greatly less advantageous to them in its terms, without some corresponding benefits or protection.   The facts of the transaction forbid the idea that this was a sale of the goods in payment of the old debt ; the qualified possession—the arrangements as to the times and sums in payment—the agreement as to the sureties—all show with certainty what was understood.   These terms were settled on the eleventh or twelfth of December.   Butler had no attorney— Collins had.   One of the attorneys of Collins was to go on the note for the deferred payments.   No time was reserved or limited for the giving of the note.   The partial possession and bill of sale was meant to be a security until the arrangement was consummated.   On the evening

of the seventeenth the notes were signed.  No exception to the sureties before agreed on seems to have been made or communicated to the Butlers.  On that day a telegraphic dispatch is sent to Lamott at San Francisco, to come to Sacramento, and he comes, in answer to it, and buys the goods.  When the notes are presented to Collins, he refuses, or declines, to look at the notes, and said, on the demand of Butler to take the notes and give up the bill of sale and store, "he would not take them." Butler then said, as the witness swears: "You agreed to take these notes and give me back the bill of sale." Collins replied, that he did not care—he had succeeded in getting the store back into his possession, and he did not intend to give it up again; and that he wanted Mr. Butler to leave the house, and not stay there any longer. Mr. Butler then went out of the store, and Mr. Lamott commenced taking down the hats, for the purpose of taking an account of stock. Mr. Collins then went over to the counter, where A. J. Butler was engaged in brushing a hat, and told him he had no business there, and ordered him to leave the house forthwith.  Mr. Collins and Mr. Lamott then took possession of the whole store, and have held it ever since. This all took place about the middle of the day on the eighteenth of December.

The only objection to all this testimony, as conducing to prove the original fraud, is, that it is matter *ex post facto*, and though it may be proof of fraud or bad faith, yet it is not proof that the fraud was in the contract itself.  In cases of fraud, the rule which admits testimony to impeach it is liberal, both in civil and criminal cases, and subsequent acts are frequently resorted to for the purpose of showing antecedent fraud.  So far does the rule extend, that distinct frauds, contemporaneous in their perpetration, are admissible to prove the fraud of the transaction under investigation.  But in this case, the fraud being proven in reference to this very transaction, the date of the criminal intent must necessarily be a matter of inference for the jury.  Thus, the dealing with property to-day as his property, by the vendor, is evidence to show the fraud committed in a sale a month ago.  The subsequent acts are illustrative of the intent and character of the first. We cannot well understand why, when a man openly violates his engagements, so as to give a false and fraudulent effect to something

Butler *v.* Collins.

which he has done before, a jury may not as well date the fraudulent intent from one period as another of the transaction, or what rule of charity requires us to date his fraud at a period which would be most advantageous to the perpetrator of the fraud. If a man goes to a livery stable, and pretends to hire a horse to go to one point, and starts off to a different place, in a different direction, and there sells him, we do not see that Courts would be bound to presume that his original motive was honest, but that he changed it afterwards.

But, apart from this, the declaration of Collins already quoted, on the eighteenth, gives color to the transaction. It shows, if believed, a purpose reckless of moral obligation, and is a clear intimation that the only or main purpose of the arrangement with the Butlers was to get possession of the store ; and certainly the other circumstances are not inconsistent with this hypothesis. But all that it is necessary to show is, that there was evidence tending to this result; and upon that question we have no sort of doubt.

The other point of appellant is better sustained. The judgment is as well for the value of the goods as for damages sustained by the taking. To prove these last, the plaintiffs introduced a witness, who, after examining the books of the plaintiffs, based his calculation of the loss they sustained upon an estimate of the profits (*according to their previous rate*) which might have been made but for the trespass. We think this evidence inadmissible. The plaintiff could not recover the value of the goods and also the profits *which might have been made* on their sale. Although the plaintiff may not have been confined to the exact value of the goods, yet the standard of recovery sought by the testimony and ruling admitted is not the correct one. There was a separate finding on the question of value, and also of the other damages. This error could not have influenced the first and general finding. The plaintiff has announced his willingness to remit these damages improperly allowed. The judgment of the Court below, therefore, will be affirmed, at the cost of the respondents, upon their filing a *remittitur* of all damages assessed by the jury, except the value of the goods as found.