[L. A. No. 26276. In Bank. Aug. 7, 1961.]

OSCAR FREEDMAN, Plaintiff and Appellant, v. QUEEN INSURANCE COMPANY OF AMERICA, Defendant and Respondent.

Horowitz & Howard and Fred Horowitz for Plaintiff and Appellant.

Thomas P. Menzies and James O. White, Jr., for Defendant and Respondent.

DOOLING, J.—Plaintiff, a jeweler, sought to recover almost $8,000 from defendant because of the loss of some diamond jewelry allegedly covered by an insurance policy issued by defendant. Upon undisputed facts the trial court made findings exonerating defendant from liability under the exclusionary clause of the policy. Plaintiff appeals from the adverse judgment accordingly entered and from the order denying

his motion to vacate such judgment. (Code Civ. Proc., §§ 663, 663a; *Rounds* v. *Dippolito,* 34 Cal.2d 59, 61 [206 P.2d 1083].)

Plaintiff was in the business of selling diamonds and jewelry set in diamonds to retailers. He received a telephone call from a person representing himself to be Bill Bates, an employee of a retail jeweler, advising plaintiff that there was in his store a customer who desired a three-carat diamond and that he, Bill Bates, wished that plaintiff would let him have several diamonds on memorandum.[1] Plaintiff was well acquainted with Bill Bates, thought that he recognized his voice over the telephone and when, within a few minutes, a person presented himself as Irving Davis, sent by Bill Bates, plaintiff assumed that he was the relative named by ''Bill Bates'' and sent to pick up the desired items. Accordingly, plaintiff handed to ''Irving Davis'' diamond jewelry costing approximately $8,000. Later in the day plaintiff learned that neither Bill Bates nor any other employee of the retail jeweler had telephoned plaintiff, and that the retail jeweler never received the diamond jewelry that plaintiff had placed in the hands of ''Irving Davis.''

The jewelry disappeared with ''Irving Davis,'' and the sole question is whether the loss occurred under circumstances which excluded it from coverage under plaintiff's insurance policy. The policy, as here pertinent, insured ''AGAINST ALL RISKS OF LOSS OR OF DAMAGE TO THE ABOVE DESCRIBED PROPERTY ARISING FROM ANY CAUSE WHATSOEVER EXCEPT: '(A) Loss, damage, or expense caused by or resulting from sabotage, theft, conversion or other act or omission of a dishonest character (1) on the part of the Assured or his or their employees or (2) on the part of any person to whom the property hereby insured may be *delivered or entrusted* by whomsoever for any purpose whatsoever. . . .' '' (Emphasis added.) The emphasized language presents the narrow question whether the diamonds were ''delivered or entrusted'' to ''Irving Davis'' within the meaning of this clause of the policy.

▮▮ Following the precedents of this court and courts generally, ''any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer'' (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914]); ▮▮ and where ''semantically permissible, the contract will be given such construction as will fairly

---

[1]That is, for examination and approval, according to the custom of the trade. If the merchandise is satisfactory to the retailer, a sales invoice would be executed.

achieve its object of securing indemnity to the insured for the losses to which the insurance relates.'' (*Russ-Field Corp.* v. *Underwriters at Lloyd's,* 164 Cal.App.2d 83, 92 [330 P.2d 432].) ▮ While there can be no recovery where the loss is within an exception or exclusion clause of the policy (45 C.J.S., Insurance, § 886(b), p. 955) and the ''right of an insurer to limit its contract of coverage may not be questioned'' (*National Automobile Ins. Co.* v. *Industrial Acc. Com.,* 11 Cal.2d 689, 691 [81 P.2d 926]), it is also the rule ''that exceptions and exclusions are construed strictly against the insurer and liberally in favor of the insured.'' (*Arenson* v. *National Automobile & Cas. Ins. Co.,* 45 Cal.2d 81, 83 [286 P.2d 816].)

▮ It is clear that under the undisputed facts a theft was committed (Pen. Code, § 484) through false personation (Pen. Code, § 530) immediately upon the obtaining of the diamonds by ''Irving Davis.'' ▮ It is equally clear that the obtaining of the possession of the diamonds by ''Irving Davis'' by means of the fraudulent representations employed accomplished a conversion of the diamonds, which would immediately support a civil action sounding in tort. (*Wendling etc. Co.* v. *Glenwood etc. Co.,* 153 Cal. 411, 414 [95 P. 1029]; *Amer* v. *Hightower,* 70 Cal. 440, 442-444 [11 P. 697]; *Butler* v. *Collins,* 12 Cal. 457, 461-463.) Basing his argument upon these propositions plaintiff contends that it can no more be said that he ''delivered'' or ''entrusted'' the diamonds to ''Irving Davis'' when his action in handing them over was induced by fraudulent representations than if he had handed them to him at the point of a gun. This court in *Butler* v. *Collins, supra,* said (12 Cal. at p. 463): ''It is said that the owner consented to the taking; and, were that so, it would undoubtedly be a sufficient answer. But consent, in law, is more than a mere formal act of the mind. It is an act unclouded by fraud, duress, or sometimes even mistake.''
▮ The Restatement of Torts expresses the same idea (§ 221, comment on clause (b) : d) : ''One who by fraudulent representations induces another to surrender the possession of a chattel to him has dispossessed the other of the chattel. Assent to the actor's taking possession of the chattel given under such circumstances is ineffectual to constitute a consent to the taking. . . .'' ▮▮ ''Delivery'' is the ''voluntary transfer of possession'' (Civ. Code, § 1796) and to ''entrust'' is defined in Webster's New International Dictionary (2d ed. 1958) as: ''. . . to *deliver* to (another) something in trust.

. . .'' (Emphasis added.) Under the cited authorities it is, at the very least, one tenable construction that there can be no valid "delivery" or "entrustment" of property to another where the possession of the property is acquired by means of some fraudulent device. Under the settled rules for the construction of insurance policies above stated, we must accept the tenable construction of the exclusionary clause most favorable to the insured.

 Concededly insurance policies may be so written as to exclude from coverage a loss occurring by reason of a fraudulent scheme, trick, device or false pretense; and as the cases cited by defendant demonstrate, an exclusion so expressed will be sustained. (*Jacobson* v. *Aetna Casualty & Surety Co.*, 233 Minn. 383 [46 N.W.2d 868, 870]; *Nelson* v. *Pennsylvania Fire Ins. Co.*, 154 Neb. 199 [47 N.W.2d 432, 433]; *Pacific Indemnity Co.* v. *Harrison*, (Tex.Civ.App.) 277 S.W.2d 256, 257; *Hartford Fire Insurance Co.* v. *Tubb* (5th Cir.) 242 F.2d 921.) But in the absence of such express language as an exception to coverage, the exclusion may not be engrafted into the parties' contract under the settled rules applying to the construction of insurance policies.

The judgment and order are reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.