**DAVID R. BALOGH, INC., Appellant,**

v.

**PENNSYLVANIA MILLERS MUTUAL FIRE INSURANCE COMPANY,**
Appellee.

No. 19304.

United States Court of Appeals
Fifth Circuit.

Sept. 18, 1962.

Rehearing Denied Oct. 26, 1962.

Richard K. Fink, Miami, Fla., for appellant.

Douglas M. Carlton, Welsh, Cornell, Pyszka & Carlton, Miami, Fla., for appellee.

Before CAMERON and BELL, Circuit Judges, and CARSWELL, District Judge.

CAMERON, Circuit Judge.

This case involves the loss of a 15.18 carat emerald, valued at $10,626.00, and the liability *vel non* of defendant insurance company under a jeweler's block insurance policy which it issued to plaintiff. The lower court granted a summary judgment for the defendant-appellee and plaintiff-appellant appeals.

The plaintiff, through its president David Balogh, had for approximately three years prior to November, 1959, done business with one Julio Castro of Bogota, Colombia, S.A., a tradesman in loose emeralds. Castro advised Balogh that he had a prospective customer for a large emerald and, on November 3, 1959, Castro and Balogh went to the Fontainebleau Hotel in Miami Beach, Florida to meet the customer. Balogh took with him an emerald, the subject matter of this action, which had been consigned to Balogh by one Jerome Block. Balogh and Castro spent some time in the coffee shop of the hotel and then went to a yacht moored across the street from the hotel; on the way Balogh delivered the emerald to Castro, on consignment, and Castro signed a memorandum so acknowledging. Aboard the yacht, Castro engaged in negotiations for sale of the emerald, with a third party who indicated a desire to have the emerald examined by his jeweler. Castro delivered the emerald to the third party who, having signed a memorandum acknowledging its receipt from Castro, left with the stone. Being advised by the third party to return to the coffee shop, Balogh and Castro waited there for a time, after which they inquired of the jeweler who was to examine the emerald and were informed that no one had been to him for such an examination. Plaintiff later identified the third party to whom the emerald was given and the man was arrested, but was acquitted upon trial. Castro is not accused of being implicated in any fraudu-

lent scheme, but he has refused to pay for the gem. The emerald was never returned to the appellant, Balogh, Inc.

The liability of the defendant insurance company in this action depends on whether the loss comes within the exception in the policy, which covered all loss "arising from any cause whatsoever except: (A) Loss * * * caused by or resulting from sabotage, theft, conversion or other act or omission of a dishonest character * * * (2) on the part of any person to whom the property hereby insured may be delivered or entrusted by whomsoever for any purpose whatsoever * * *"

The question, therefore, is narrowed to this: was the emerald "delivered or entrusted" to the third party who made off with the stone? If so, the exception denies liability; if not, there is coverage. It seems to us beyond question that the loss occurred because of that third person's dishonest act, whether he was the same person Balogh thought he identified or not.

The parties have brought before us two cases construing clauses almost identical with that above quoted, wherein opposite conclusions were reached. In Abrams v. Great American Insurance Co. (Ct.App.N.Y., 1935), 269 N.Y. 90, 199 N.E. 15, plaintiff was induced "through trick and device, by means of false representations and with intent to steal," to hand over jewelry to one Rose Friedman for the professed purpose of effecting a sale by her to a third party. Instead, she absconded to France with the jewelry. The plaintiff did not recover, the court reasoning as follows:

"If plaintiff entrusted the jewelry to Rose Friedman, the transaction falls within the exception, and the loss arising from the larceny or 'theft' or 'act of a dishonest character' by the person to whom the property was 'entrusted' is not covered by the policy. The language employed in the contract of insurance must be given its ordinary meaning, such as the average policyholder of ordinary intelligence, as well as the insurer, would attach to it. Such common words in the policy as 'theft,' 'dishonest,' and 'entrusted' cannot be deemed to have been used as words of art with legalistic implications. The exception in the policy does not include such phrases as 'common law or statutory larceny' but the plain word 'theft.' When the word 'entrusted' appears in the contract the parties must be deemed to have entertained the idea of a surrender or delivery or transfer of possession with confidence that the property would be used for the purpose intended by the owner and as stated by the recipient. The controlling element is the design of the owner rather than the motive of the one who obtained possession. Because plaintiff was deceived and his confidence was abused, he entrusted his property to a thief. The meaning of the word as used in this contract is such 'as common thought and common speech would now image and describe it.' Van Vechten v. American Eagle Fire Ins. Co., 239 N.Y. 303, 307, 146 N.E. 432, 433, 38 A.L.R. 1115. Our view of the case places us in agreement with the decision in Lake v. Simmons, decided by the Court of Appeal (1926) 2 K.B. 51, rather than the opposite decision by the House of Lords in the same case (1927) App.Cas. 487."

The opposite conclusion was reached in Freedman v. Queen Insurance Company of America, (S.Ct.Cal., 1961), 56 Cal.2d 454, 15 Cal.Rptr. 69, 364 P.2d 245, upon the reasoning that there was no real "consent" by the owner in that he was induced by fraud and deceit to deliver the item and therefore there was no "entrustment." The California court felt that there was no more delivery or entrustment in such a case than if the item had been handed over at the point of a gun.

We find ourselves in agreement with the Abrams case. The test is the intent or state of mind of the person turning the item over to another, not the intent or state of mind of the person receiving the item. The risk that someone will swindle or trick the insured is excepted from the coverage, by its plain terms "dishonest[y] * * * on the part of any person to whom the property may be delivered or entrusted * * *" To follow the California decision would be to hold that coverage depended upon whether the other party conceived of his dishonest plan before or after he took possession of the property. We do not think that this is the test set out in the language of the policy before us.

It is not, in our opinion, controlling that the "dishonest act" in this case was that of the third party, not the one to whom plaintiff entrusted the emerald. The policy says: "entrusted by whomsoever;" and here the property was entrusted to the thief by Castro, whom we hold to be included in "whomsoever." Moreover, plaintiff-appellant was present through its responsible officer when the property was "entrusted" to the thief, and is bound by Castro's "entrustment" to him.

The contention that if the insurer wished to exclude or except such losses it could have expressly excluded loss by reason of a fraudulent scheme, trick, devise or false pretense is, in our opinion, without merit. We think that the policy effectively excepts or excludes such loss by excepting loss "resulting * * * from * * * dishonest[y] ‘ * * * on the part of any person * * * to whom the property * * * is delivered or entrusted * * *." The test is whether or not the property was entrusted or delivered to the dishonest person. Here, it is undisputed that the jewel was voluntarily handed over to the thief and thus was, under the terms of the policy, entrusted to him. The judgment of the lower court was right and it is

Affirmed.