**ROYAL INDEMNITY COMPANY,**
**Appellant,**

v.

**KAISER ALUMINUM AND CHEMICAL CORPORATION, Appellee.**

**No. 73–3142.**

United States Court of Appeals,
Ninth Circuit.

April 29, 1975.

---

John B. Merchant (argued), San Francisco, Cal., for appellant.

Harding A. Orren (argued), Minneapolis, Minn., for appellee.

## OPINION

Before BROWNING and ELY, Circuit Judges, and ANDERSON, District Judge.*

ELY, Circuit Judge:

This appeal arises from a suit brought by a New York insurance company ("Royal") against its insured (Kaiser Aluminum, a Delaware corporation having its principal place of business in California). The District Court's jurisdiction rested upon diverse citizenship and the requisite amount in controversy. Royal provided "Boiler and Machinery" insurance coverage for Kaiser's domestic and foreign plants which became effective November 15, 1964, and continued until the policy was cancelled by Royal, effective March 25, 1966.

On September 19, 1965, four Kaiser plants near New Orleans, Louisiana, were struck and damaged by a hurricane called "Betsy", and Kaiser was paid $3,832,954.00 by Royal for Kaiser's losses. Royal then instituted suit against Kaiser to recover additional premiums related to the domestic coverage, and Kaiser counterclaimed for a refund of deposit premiums paid to Royal under the insurance contract. Royal subsequently amended its complaint to include claims for reformation or, in the alternative, rescission of the insurance contract on grounds that Kaiser had made false representations to induce Royal to extend coverage at an unduly low rate. After hearing evidence in support of Royal's claim of false representations, the trial court made findings of fact and, pursuant to Fed.R.Civ.P. 41(b), granted Kaiser's motion to dismiss Royal's complaint in its aspect relating to alleged fraud. The trial court then ordered that evidence on the remaining premium claims and counterclaim be heard by a magistrate. The magistrate conducted a trial and recommended that Royal's claims be disallowed and that Kaiser's counterclaim be granted. Over Royal's objection, the trial court adopted the magistrate's findings and ordered entry of judgment.

Our review of the record convinces us that the District Court's judgment must be affirmed.

## I. The Dismissal of Royal's Fraud Claim.

Royal alleged that it offered to cover Kaiser's foreign plants for a three year premium of $48,000 in reliance upon Kaiser's representation that (1) this was the rate currently being paid for existing foreign coverage, and (2) upon Kaiser's later representation that it had a commitment from other brokers to furnish the same coverage for a similar premium.

In making its offer Royal made no independent inspection of Kaiser's foreign plants. Instead, in the initial stages of its calculations, it relied entirely on the representation of an independent insurance broker (Johnson & Higgins) that Kaiser was then paying annual premiums of $16,000 per year for foreign coverage for its plants in West Germany and Argentina. In fact the $16,000 figure referred only to that which another broker (Willis, Faber & Dumas) had indicated would be the lowest possible quotation available in their market for the foreign coverage desired. The only foreign coverage actually in existence at the time was for a German Kaiser plant at an annual premium of $43,874.

On September 19, 1964, Johnson & Higgins ("J & H") conveyed Royal's $16,000 quotation to Kaiser on an informal basis, making it clear that this quotation for foreign coverage was based on information that Kaiser was paying $16,000 annually for existing coverage of its plants in Argentina and West Germany. The quotation was formally presented on October 6th, 1964, and accepted on the following November 2d. On November 10, 1964, Royal discovered that in fact

---

* Honorable J. Blaine Anderson, United States District Judge, Boise, Idaho, sitting by designation.

Kaiser had no existing Argentinian coverage and that the $16,000 figure mentioned by Kaiser referred only to what another broker (Willis) had indicated would be the lowest quotation available in their market. Despite the discovery of this information, Royal decided to proceed, issuing foreign coverage at the $16,000 annual premium.

Royal now claims that because it was made clear to Kaiser on September 19th that the Royal quotation was based on information that Kaiser had existing foreign coverage at an annual premium of $16,000, Kaiser had an immediate duty to disclose to Royal that such coverage did not exist. Royal further asserts that the $16,000 quotation from Willis was subject to an agreement to renegotiate the premium if experience demonstrated that a higher rate was required, and that Kaiser's failure to disclose the conditional nature of this quotation constituted a material misrepresentation.

■ In order to prevail on the claim for rescission of the contract, Royal must prove that it reasonably and *justifiably* relied upon a misrepresentation of *material* fact. *See* Cal.Civ.Code § 1689 (West 1974); Local Joint Executive Board of Spokane, et al. v. Spokane Lodge No. 228, Benevolent and Protective Order of Elks, 443 F.2d 403 (9th Cir. 1971); Burns v. Prudential Life Insurance Company, 201 Cal.App.2d 868 (1962); Seeger v. Odell, 18 Cal.2d 409, 115 P.2d 977 (1941). The trial court found a lack of convincing evidence of knowing omissions or misstatements by Kaiser and thus concluded that Royal had failed to demonstrate fraud or deceit. Even if it were assumed that innocent misrepresentation were shown, the trial court further found that Royal's reliance on the misstatements was not justifiable, and that Royal had not proved the materiality of the misstatements. There was substantial evidence in support of each of these findings; hence, the trial court's dismissal of Royal's fraud claim must be upheld.

■ Royal would have us hold that it was justified in relying upon what a proposed insured claims it is paying another insurer for similar coverage, without any independent effort to verify the risk involved through on-site inspections, or to check prevailing rates available from other insurers. Notwithstanding its discovery that its information as to the existing policies in Germany and Argentina was incorrect, Royal nevertheless agreed to cover Kaiser upon the basis of information that Royal knew was incomplete. If the $48,000 figure was so unreasonably low as Royal now claims in seeking reformation to increase the annual foreign premium to $263,303, it staggers credulity to believe that Royal never seriously considered it. Royal is part of an experienced and prestigious international insurance institution. It clearly departed from the accepted practice of the industry in failing to inspect the locations that it was insuring. In view of Royal's experience in the insurance industry, its total dependence on slight information known to be incomplete, and the enormous disparity between $48,000 and the alleged "proper" premium of $263,303, we cannot agree with Royal that its reliance on Kaiser's statements was justifiable.

■ We also agree with the trial court's conclusion that Royal has not demonstrated the materiality required for rescission. Royal argues that had the nature of the Willis quotation been fully disclosed, the probable result would have been that Royal would have reserved the right to increase the foreign premium—which probably would have caused Kaiser to reject Royal's offer and seek insurance elsewhere. However, the entire chain of events strongly indicates that Royal threw all caution to the winds in rushing headlong to acquire the lucrative Kaiser business. Royal knew of the alleged misrepresentation three days before it issued the binder of insurance, yet it went ahead. Against this evidence, Royal essentially offers only its own allegation that it would have acted differently had it earlier known of the misrepresentation. On these facts we cannot agree with Royal that the trial court erred in holding that there was

insufficient evidence to prove the materiality of the asserted misrepresentations.

■■ Our conclusions as to the rescission claim require that we also affirm the dismissal of the claim for reformation of the insurance contract so as to increase the annual premium for foreign coverage to $263,303. The trial court reasoned that since its findings as to rescission eliminated fraud or deceit as a ground for reformation, Royal's claim must stand or fall on its allegations as to mistake. When mistake is the ground relied upon for reformation, the mistake must be material to the rights of the parties and the negligence of the claimant is a defense. We have already determined with respect to reliance and materiality that the District Court was justified in concluding that Royal would not have acted differently had it known the "true facts" earlier. Additionally, Royal's insuring Kaiser, without having conducted an adequate investigation of the magnitude of the insurance risks was, in and of itself, a fact justifying the District Court's determination that, in the light of the applicable standards, Royal was negligent. Accordingly, Royal's claim for reformation of the contract was also properly rejected.

## II. *The Premium Disputes.*

Royal claimed an additional three-year premium of $343,123 based on an alleged separate agreement by the parties to adjust the policy premium upon Royal's inspection of the machines in Kaiser's plants. However, the word "blanket" as required by condition 15(a) of the policy,[1] did not appear on any of the schedules. The magistrate, and later the trial judge, rejected Royal's argument that the court

should look, not to whether "blanket" appeared on the schedules, but rather to extrinsic evidence showing that it was the expressed intent of the parties that Royal would be allowed to adjust premiums after completion of inspections. The court further held that even if there were evidence of a separate agreement for an increase of premium as claimed, such evidence would be inadmissible under the parol evidence rule (Cal.Code Civ.Proc. § 1856, West 1974), and, moreover, that Royal was estopped from asserting any claim for an additional premium because Royal waited almost two years, until after it had unilaterally rescinded the policy, before asserting a claim for additional premiums. These three grounds for denying the claim are adequate, and any one of them would be sufficient to warrant the District Court's denial of Royal's claim for $343,123 in additional premiums.

■ Royal made a number of other claims for additional premiums, all based upon alleged contemporaneous agreements by the parties that were not expressed in the insurance contract. On all of these claims the magistrate, and then the trial judge, found essentially that the policy constituted the complete written agreement between the parties that there was no convincing evidence of separate contemporaneous agreements, that if there were such agreements, evidence of them would be inadmissible under the parol evidence rule, and that Royal was estopped from asserting the claim by reason of having waited nearly two years before first asserting the claim. Each of the findings on these issues is supported by substantial evidence, and we find nothing in the record to support Royal's argument that the court should

---

1. Condition 15(a) of the policy reads as follows:

"15. Blanket Group Plan
   With respect to a described group of Objects opposite which the word 'Blanket' is entered in the column captioned 'Designating Number of each Object' of any Schedule or Page forming a part of this policy, each Object, of such group of Objects, shall be considered as being designated and described in such Schedule or

Page and the premiums for all kinds of insurance afforded by this policy as applicable thereto shall be adjusted as follows:
   (a) any premium applicable to such group or groups of Objects shall be adjusted, as of the effective date such insurance applies, on the basis of the information obtained at the time of the Company's survey of such Objects that are in use or connected ready for use as of such effective date."

have altered the express language of the contract which Royal itself drafted.

### III. Interpretation of the "One-Accident" Provision of the Premium Adjustment Endorsement.

The final issue concerns the interpretation of the phrase "One-Accident" as it appears in Endorsement 18 of the policy and as it applies to the losses caused by Hurricane Betsy. Endorsement 18 of the Royal policy provided a method whereby, at the end of the policy term (or upon cancellation) the "Earned Premium" would be adjusted on the basis of "Incurred Losses." A good loss history would result in a reduction in the ultimate "Earned Premium" due under the policy, while an adverse loss history would entitle the insurer to an increase in the final "Earned Premium" due. However, Endorsement 18 also provided that the maximum "Incurred Losses" that may be considered in the premium adjustment for any "One Accident" are $50,000. During the time that Royal's coverage of Kaiser's plants was in effect, Royal paid Kaiser $3,832,954 in property damage and business operation losses incurred as a result of the hurricane damage to the four Kaiser plants in the New Orleans area.

Royal contends that the damage to each plant was a separate "Accident" so that it could count up to $50,000 in "Incurred Losses" for each plant in adjusting the "Earned Premium." Kaiser relies on Condition I of the basic policy, which provides:

> ". . . The term 'One Accident' shall be taken as including all resultant or con-commitant Accidents, whether to one Object or to more than one Object, or to part of an Object."

The magistrate received evidence on the question of what the parties intended by the "One Accident" clause as it related to events such as hurricanes, and ruled in favor of Kaiser's interpretation that the hurricane itself was "One Accident" so that Royal could use only $50,000 of the total Hurricane Betsy loss in calculating the adjusted premium.

It is well settled that when a contract of insurance is drafted by the insurer, any ambiguity, uncertainty, or doubt is to be resolved by a construction favoring the insured. Steven v. Fidelity & Cas. Co., 58 Cal.2d 862, 27 Cal.Rptr. 172, 377 P.2d 284 (1962); Freedman v. Queen's Ins. Co., 56 Cal.2d 454, 15 Cal. Rptr. 69, 364 P.2d 245 (1961); Ensign v. Pacific Mut. Life Ins. Co., 47 Cal.2d 884, 306 P.2d 448 (1957). Hence any ambiguity in the language of the contract here involved must be construed against Royal. The magistrate and the trial judge did not rely upon this rationale, since they found the parties to have intended the interpretation urged by Kaiser. Nevertheless, the principle reinforces the challenged disposition, and it, together with the applicable findings of fact, convince us that the term "One Accident" was correctly interpreted to mean that all of the losses caused by Hurricane Betsy resulted from "One Accident", permitting inclusion of only $50,000 as an "incurred loss" in determining the amount of the adjusted premium.

In all respects, the judgment of the District Court is

Affirmed.