407 So.2d 314 (1981)
SECURITY INSURANCE COMPANY OF HARTFORD, Appellant,
v.
INVESTORS DIVERSIFIED LIMITED, INC., d/b/a Johnny's Auto Repair, Appellee.
No. 80-1738.
District Court of Appeal of Florida, Fourth District.
December 15, 1981.
*315 Rosemary Cooney of Paxton, Crow, Taplin & Bragg, P.A., West Palm Beach, for appellant.
Michael P. Lesniak of James & Lesniak, P.A., Fort Pierce, for appellee.
LETTS, Chief Judge.
This case involves the theft of an unsold fork lift from an equipment dealer whose carrier claims the applicable insurance policy did not cover larceny by trick.[1] The trial judge disagreed and found coverage. So do we.
The facts of this case would make interesting material for a moot court competition and indeed the lawyers on both sides have written superior briefs and have made excellent oral presentations before this court.
In essence, the dealer received a telephone call, supposedly from a desirable customer who asked to be allowed to try out a fork lift with a view to purchasing same. Agreeing to permit a demonstration, it was arranged during the same telephone call for the fork lift to be picked up from the dealer by the customer's agent "Ronald." In due course "Ronald" arrived and the dealer made out a ticket to the customer which "Ronald" signed, loaded the fork lift onto a U-Haul trailer and drove away.
Needless to say the fork lift was never returned and when the dealer called the customer to inquire of its whereabouts, he discovered that the previous telephone conversation had not been with the customer at all, but with an imposter. Moreover the customer had no employee named "Ronald," didn't want a fork lift and had never seen the dealer's fork lift which in fact had been stolen. Upon this realization, the dealer called the police and notified his insurance company which denied coverage.
We have seen many denials of coverage, some almost frivolous, but this is not one of those because Florida has yet to rule directly on this particular policy language. The outcome turns on whether we follow the rule adopted in California, in which case the dealer has coverage, or the rule of the Fifth Circuit, in which event he does not. We recognize that the Fifth Circuit is much closer to home, yet it appears to us that the California reasoning is superior and thus we adopt it.
The insurance policy in question contained the following exclusionary clause:
4(g) Loss, damage, or expense caused by or resulting from misappropriation, secretion, conversion, infidelity, or any dishonest act on the part of the insured or *316 other party of interest, his or their employees or agents or any person or persons to whom the property may be entrusted. (Emphasis supplied).
As counsel for the insurance company succinctly puts it, "the facts of this case are undisputed. The main issue on appeal is whether the policy exclusion outlined above excludes the loss sustained by the [dealer]. The gist of this issue is whether an insured can `entrust' property to a thief."
The Fifth Circuit view is that the property was certainly entrusted to the thief in that it was voluntarily and freely handed over to him. David R. Balogh, Inc. v. Pennsylvania Millers Mutual Fire Insurance Company, 307 F.2d 894 (5th Cir.1962). According to Balogh, "the test is the intent or state of mind of the person turning the item over to another, not the intent or state of mind of the person receiving the item." Id. at 897. Applying this test, the Fifth Circuit concludes that the dealer intended to turn over the (in that case) emerald to the very person he gave it to: ergo, he entrusted it to a dishonest person and had no coverage under the policy.
By contrast the California Supreme Court's view is there can be no valid entrustment of property to another where the transfer of possession is acquired by means of some fraudulent device. To the California Court, "consent" to turn property over to another is more than the mere final act of voluntarily handing something over to the individual standing before the transferor. It is an act unclouded by fraud or duress. Freedman v. Queen Insurance Company of America, 56 Cal.2d 454, 15 Cal. Rptr. 69, 364 P.2d 245 (Cal. 1961).
We prefer this latter view and adopt it. Indeed we can even reach it using the Fifth Circuit test. To us, the intent or state of mind of the dealer in the case now before us was to entrust the fork lift to his customer's agent. It was never his state of mind to entrust the property to a thief or an imposter. It is quite true that the dealer voluntarily consented to hand over the fork lift to "Ronald," who under the policy would qualify as "any person." However he did so in the belief that "Ronald" was his customer's agent, not a thief. In sum, the entrustment[2] was not to any person, it was to his supposed customer.
To accept the insurance company's argument is to agree that this policy language is written to expressly exclude larceny by trick. As the California Court said, and we agree, if that is what was intended by the exclusion, then the policy should unequivocally say so instead of employing ambiguous language. The insurance company contends that the language is not ambiguous, but we cannot agree and offer as proof of that pudding the fact that the Supreme Court of California and the Fifth Circuit in New Orleans have arrived at opposite conclusions from a study of essentially the same language.[3] It is well settled that ambiguity in an insurance contract is construed in favor of the insured and exclusionary language against the insurer. Prudential Insurance Company of America v. Bellar, 391 So.2d 737 (Fla. 4th DCA 1980).
Finally, we are of the view that the result is controlled by Collins v. Royal Globe Insurance Company, 368 So.2d 941 (Fla. 4th DCA 1979). In Royal Globe the thief tricked the owner of a motor home into parting with his possession and the insurance company denied coverage because the policy excluded the dishonest acts of those in "lawful possession." The policy language in the case now before us is not identical and here we deal with those "to whom the property may be entrusted" instead of those persons to whom the possession of the property is "lawfully" given away. However, we find the distinction to be one without a difference. As Judge *317 Anstead, speaking for the Court, put it in Royal Globe,
To most persons, a thief is a thief. And whether the thief elects to act by stealth in the night or by trick in the daylight makes little difference to the owner who suffers a loss of his property and seeks recovery on an insurance contract he purchased for just such an eventuality. If certain classes of thieves or types of theft are not to be covered by the theft insurance, the insurer must specifically exclude such losses in language that clearly defines the risks not to be covered. A thief acquires no lawful possession and if he was a thief from the start then his possession was unlawful from the start.
We find no merit in the other point on appeal.
AFFIRMED.
DOWNEY, J., concurs specially with opinion.
MOORE, J., dissents with opinion.
DOWNEY, Judge, concurring specially:
Were this a case of first impression in Florida, I would opt to reverse the judgment appealed from on the authority of David R. Balogh, Inc. v. Pennsylvania Millers Mutual Fire Insurance Company, 307 F.2d 894 (5th Cir.1962). However, I feel constrained to concur in the conclusion reached by Judge Letts because I believe the decision in this case is controlled by Collins v. Royal Globe Insurance Company, 368 So.2d 941 (Fla. 4th DCA 1979).
MOORE, Judge, dissenting:
I respectfully dissent. In my opinion the better reasoned result is that reached by the U.S. Fifth Circuit Court of Appeal in David R. Balogh, Inc. v. Pennsylvania Millers Mutual Fire Insurance Company, 307 F.2d 894 (5th Cir.1962). I would adopt the reasoning in that case here and reverse.
NOTES
[1] In Florida, the particular criminal statute would appear to be Section 817.02 Florida Statutes (1979) which states in pertinent part:

Whoever falsely personates or represents another, and in such assumed character receives any property intended to be delivered to the party so personated, with intent to convert the same to his own use, shall be punished as if he had been convicted of larceny.
[2] The dealer also argues that "entrusted" does not necessarily include "delivery" which latter word appears in the Balogh and Freedman policy language, but not in the one before us now. Having here succeeded, he will hardly be disappointed, but for future reference, we disagree and accept the insurance company's view that entrustment normally includes delivery.
[3] They even disagreed as to whether the same language was ambiguous!