**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0209n.06
Filed: March 21, 2007

**No. 05-1384**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LARRY A. BAGSBY | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| TINA K. GEHRES, et al. | ) | |
| | ) | **OPINION** |
| *Defendants-Appellees.* | ) | |

**BEFORE:** **DAUGHTREY and COLE, Circuit Judges; and GRAHAM, District Judge.**[*]

**JAMES L. GRAHAM, District Judge.** Larry Bagsby ("Bagsby") appeals from the Eastern District of Michigan's grant of summary judgment in favor of Defendants Tina Gehres ("Gehres"), Dennis Gehres, Lois Gehres, Sylvia Gehres, Katherine Hale and Russell Hale (collectively "Gehres Family"), and the law firm of Schnelz, Wells, Monaghan & Wells, P.C. ("Schnelz"), on Bagsby's claims for declaratory relief and conversion in a diversity case. Bagsby also appeals the district court's grant of summary judgment in favor of Defendant Magnevu Corp. ("Magnevu") on Bagsby's claim of negligent misrepresentation. Bagsby further appeals the district court's denial of leave permitting him to file a Fourth Amended Complaint in this matter. Finally, Bagsby appeals the district court's denial of his motion to dismiss Gehres' counterclaims for allegedly concealing those claims in her bankruptcy proceeding.

For the following reasons, we **AFFIRM** the district court's grant of summary judgment on Bagsby's declaratory relief claim in favor of Gehres, the Gehres Family, and Schnelz, and the district

---

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

court's grant of summary judgment in favor of Magnevu on Bagsby's negligent misrepresentation claim; we **REVERSE** the district court's grant of summary judgment to Gehres, the Gehres Family, and Schnelz on Bagsby's conversion claim; we **AFFIRM IN PART** and **REVERSE IN PART** the district court's denial of leave to permit Bagsby to file his Fourth Amended Complaint, and we **REMAND** this case to the district court for further proceedings consistent with this Opinion. We find that Bagsby's appeal of the district court's refusal to dismiss Gehres' counterclaims is not properly before this Court. We **DENY** Magnevu's request for sanctions, and Schnelz's motion for sanctions, costs, and attorneys' fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

Bagsby and Gehres are both attorneys who were previously married to each other. The Gehres Family is comprised of Gehres's parents (Dennis and Lois Gehres), grandmother (Sylvia Gehres), and sister and brother-in-law (Kathy and Russell Hale). Magnevu is Gehres's former employer. Schnelz is a Michigan law firm that formerly represented Gehres in this action.

Bagsby and Gehres married in 1995. They separated in February 1998, and Gehres moved from Missouri to San Diego, California.[1] Bagsby filed for divorce in December 1998, in Missouri. The Circuit Court of St. Charles County, Missouri ("Missouri Circuit Court") entered a judgment and decree of dissolution by consent of the parties on April 28, 1999. The judgment and decree incorporated a separation agreement, which divided the former couple's property and debts and contained provisions regarding the construction and enforcement of the agreement.[2]

---

[1]

When Bagsby brought the original action, Gehres lived in California; she has since moved to Michigan where much of her family lives. Bagsby resides in Missouri.

[2]

Specifically, the divorce decree provides:

[e]ach party shall receive as his or her separate property any and all interests in any private law practice or case, whether pending or concluded, in which he or she has been involved at any time during the marriage . . . . [f]urther, neither party shall be entitled to claim compensation of any kind or reimbursement for expenses from the other relating to legal or other services provided by one party for the other party or any law firm or other entity or person with whom the other was affiliated during the

2

During the spring and summer of 1999, Bagsby and Gehres reconciled. Bagsby planned to move to San Diego where the couple would live and allegedly begin their own law practice. In the late spring of 1999, Gehres allegedly asked Bagsby to provide her with legal services for Magnevu's benefit. Bagsby estimated the cost of the legal services he provided amounted to $8,000.00.

In June of 1999, Bagsby asked Gehres to assist him with evaluating the present value of a structured settlement for a case (the "Kilbury case") on which he was working with his law firm.[3] Bagsby alleges that Gehres informed him that Magnevu's CEO consented to her performing this task during business hours. According to Bagsby, Gehres spent a total of four hours on this work.

Bagsby alleges that during the summer of 1999, Gehres searched for law firms with which she and Bagsby could associate, obtained office lease estimates, researched advertising expenses, and purchased a new computer, facsimile machine, and scanner. Bagsby further alleges that between July 27 and August 6 of 1999, he and Gehres looked for a home to purchase in California. On August 6, Bagsby wire-transferred $83,000.00 from his law firm partnership account to Gehres's personal checking account. On the same day he took an additional partnership draw for $354,500.00 in the form of a check payable to Gehres. The check's memo line read "Kilbury Fees."[4]

On August 9, Gehres deposited the $354,500.00 check into their joint checking account with Smith Barney. The account required the parties to inform Smith Barney if one or two signatures were required to authorize checks drawn on the account for "multiple owner accounts." On this account, both Bagsby's and Gehres's signatures were required. Bagsby alleges Gehres obtained a "secret" personal identification number ("PIN") allowing her to make transfers from the account without his knowledge or consent.[5]

---

marriage.

[3]

Bagsby received over $800,000.00 in legal fees from this settlement.

[4]

Bagsby has alleged that this note was put on the check by his law firm partner to keep track of the source of Bagsby's draw for accounting purposes. He maintains this note does not indicate that his law firm was compensating Gehres for work on the Kilbury case.

[5]

Gehres claims the PIN was not secret and that Bagsby himself tried to transfer money using

Bagsby later wired additional monies exceeding $300,000.00 into the Smith Barney account. On August 17, 1999, Bagsby and Gehres entered into a residential purchase agreement on a home and deposited $11,650.00 as earnest money on the purchase. This sum was jointly transferred by Bagsby and Gehres from their Smith Barney account into Gehres's personal account via written instructions to Smith Barney, from which Gehres paid the real estate agent.

On August 25 and 26, Gehres transferred $354,500.00 from the Smith Barney account into her personal bank account without telling Bagsby about the transfer. By August 30, Gehres had spent the $83,000.00 wire-transfer on her personal debts and left California. Gehres subsequently transferred the remaining monies (the $354,500.00) from her bank account to her family members through the purchase of real estate or outright transfers, and moved to Michigan.

Bagsby contends that the money, both the $83,000.00 wire-transfer and the $354,500.00 check, was earmarked solely and exclusively to purchase a home for the couple and to fund a law partnership for them in San Diego, California. Gehres denies that she agreed to begin a law practice with Bagsby and that she took steps to begin establishing such a partnership. Gehres asserts that the Smith Barney account was not a partnership account, but rather a "tenants-in-common" account, such that she had an ownership interest in the money, and that Bagsby consented to her use of the $83,000 to pay her personal debts.

## B.      Procedural History

In short, Bagsby claims Gehres converted the $83,000.00 and the $354,500.00 while she, and the funds, were in California. He claims that in accepting funds from Gehres, the Gehres Family and Schnelz, the law firm that formerly represented Gehres in this case, converted portions of those funds as well. Gehres counters that she was entitled to those funds, and is not liable for conversion.

### 1.      The Federal Action

Bagsby brought his original claims for breach of contract, breach of fiduciary duty, conversion, money had and received, unjust enrichment, and violation of the Uniform Partnership Act, in the Southern District of California against Gehres, Sylvia Gehres, Katherine Hale, Russell Hale and "Does 1 through 100," and sought injunctive and declaratory relief, the imposition of a

---

the PIN.

constructive trust and an accounting.[6]   The court denied Bagsby's motion for a preliminary injunction and initial motion for summary judgment, but issued a notice of *lis pendens* encumbering Michigan properties owned by Gehres and the Gehres Family.

In December of 1999, Bagsby filed a First Amended Complaint, adding additional claims and defendants, including Dennis and Lois Gehres.  On March 28, 2000, the Southern District of California transferred the case to the Eastern District of Michigan under 28 U.S.C. § 1404(a).  In June of 2000, attorneys Kurt Schnelz and Bryan Monaghan of Schnelz, Wells, Monaghan & Wells, appeared on behalf of some of the defendants, and on June 9, 2000, appeared on behalf of Gehres.

Bagsby next obtained leave in the Eastern District of Michigan to file a Second Amended Complaint that added more defendants, including Magnevu, dropped the claims for breach of fiduciary duty, violation of the Uniform Partnership Act, and defalcation of funds, and added RICO and fraud claims.  Bagsby filed his Second Amended Complaint on August 25, 2000.  On February 2, 2001, attorneys Schnelz and Monaghan withdrew as counsel for the defendants in this case.

### 2.    *The State Court Actions*

Contemporaneously with his federal action, Bagsby sought a dissolution of the alleged partnership between himself and Gehres, claimed unjust enrichment and detrimental reliance against her, and sought restitution and an accounting in the Missouri Circuit Court.  After a trial on Bagsby's dissolution of partnership, unjust enrichment and detrimental reliance claims, the Missouri Circuit Court issued Findings of Fact and Conclusions of Law in Bagsby's favor on July 24, 2001, and entered a judgment against Gehres on those claims.  The Missouri Circuit Court also found that Bagsby satisfied the elements of an equitable tracing of $22,000.00 of the disputed funds that Gehres allegedly paid to Schnelz as legal fees.

Bagsby contends that this judgment, in which the Missouri Circuit Court found that Gehres was not legally entitled to any of the funds, conclusively establishes his ownership of the funds.  This judgment is the basis of his declaratory relief request as to Gehres, the Gehres Family and Schnelz.

---

[6]

Gehres has asserted counterclaims against Bagsby for assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, abuse of process, intentional interference with contractual relations, statutory slander of title, and slander of title at common law.

As will be discussed, *infra*, the Missouri Court of Appeals ultimately vacated the Missouri Circuit Court's judgment.

Bagsby also brought contempt proceedings against Gehres in the Family Division of the Missouri Circuit Court for allegedly violating the terms of the April 1999 divorce decree because Gehres claimed she was entitled to the disputed funds for her work on the Kilbury case and for helping Bagsby build his Missouri law practice. After a bench trial, the Missouri Circuit Court found in Gehres's favor. The court explained that the Kilbury fees were indeed Bagsby's separate property under the decree, but after the divorce, Bagsby could do anything he wanted with the money, including transferring it to Gehres. As such, she did not violate the divorce decree in taking the money, and neither party's claim to the money was rooted in the divorce decree.

### 3. *The Proceedings Relevant to this Appeal*

Based on the Missouri Circuit Court's decision in his favor on the ownership of the funds in question and the existence of a partnership between him and Gehres, Bagsby moved for leave to file a Third Amended Complaint in the Eastern District of Michigan to simplify this case by dropping all claims except for his request for declaratory relief and conversion against Gehres, the Gehres Family, and Schnelz, and negligent misrepresentation against Magnevu. The district court granted the motion; Bagsby filed a Third Amended Complaint in April of 2002.

In May 2002, Gehres notified the district court that she had filed for bankruptcy in California. The district court stayed this case and closed it for administrative purposes. Schnelz then filed a motion for summary judgment. Bagsby moved for summary judgment on the declaratory and conversion counts of his Third Amended Complaint against Schnelz. The district court reopened the case and lifted the stay to consider those motions.

Schnelz's and Bagsby's motions were referred to the Magistrate Judge, who recommended granting Schnelz's motion and denying Bagsby's motion in his order of September 9, 2003. Determining that regardless of whether California or Michigan substantive law applied to the dispute, Bagsby's judgment in the Missouri Circuit Court would entitle him to a declaratory judgment against Schnelz only if Schnelz was a party, or in privity with a party, to the Missouri Circuit Court lawsuit, which it undisputedly was not. As to Bagsby's conversion claim, the Magistrate Judge, applying California law, found that Schnelz properly relied on the Smith Barney

account documents noting that Gehres and Bagsby were tenants in common, such that Bagsby could not establish that he had the ownership interest or right of possession over the funds.

The District Court Judge adopted the Magistrate Judge's report and recommendation, and granted summary judgment in Schnelz's favor on Bagsby's declaratory relief and conversion claims, noting that Bagsby did not offer a substantive objection to the Magistrate Judge's legal analysis of the declaratory judgment claim and that, as to the conversion claim, Gehres held the funds in the Smith Barney account as a tenant in common and had an equal right to posses them. The District Court Judge found that Bagsby failed to establish a genuine issue of material fact as to whether Schnelz wrongfully asserted dominion over Bagsby's property. On June 22, 2004, the district court lifted the stay as to the remaining claims as Gehres had been granted a discharge in her case by the U.S. Bankruptcy Court for the Northern District of California.

Later that summer, the Missouri Court of Appeals vacated the lower court's decision in Bagsby's favor on the existence of a partnership between himself and Gehres and her alleged unjust enrichment, concluding that Bagsby improperly and vexatiously split his causes of action between the Missouri Circuit Court and the federal district court (the pending action). The Court of Appeals remanded the case with directions to the Missouri Circuit Court to dismiss it. On September 7, 2004, Bagsby sought leave in the Eastern District of Michigan to file a Fourth Amended Complaint adding the defendants and claims previously named and pled, but then dropped.[7]

---

[7]

Bagsby moved for leave to file a Fourth Amended Complaint on May 18, 2004, seeking to add claims for civil conspiracy, fraud, money had and received, and unjust enrichment, previously claimed in the Second Amended Complaint.

After the Missouri Court of Appeals reversed the Missouri Circuit Court's judgment in Bagsby's favor, he moved for leave to file a "Fourth Amended Complaint (Superceding Previous Fourth Amended Complaint)" on September 7, 2004. This complaint added claims for breach of fiduciary duty, detrimental reliance, breach of contract, restitution, violation of the Uniform Fraudulent Conveyances Act, constructive trust, accounting, and quantum meruit in addition to those claims he sought to add in the motion for leave to file a Fourth Amended Complaint filed on May 18, 2004.

It does not appear that the district court ever ruled on his original motion of May 18, 2004, for leave to file a Fourth Amended Complaint, but instead ruled on his motion for leave to file a Fourth Amended Complaint (Superceding Previous Fourth Amended Complaint), filed on September 7, 2004. The September 7, 2004, motion is the subject of this appeal.

7

The parties consented to the jurisdiction of the Magistrate Judge under 28 U.S.C. § 636(c), who heard the pending motions relevant to this appeal, including Bagsby's renewed motion to dismiss Gehres' counterclaims for allegedly failing to disclose them in the bankruptcy proceeding, Gehres's and the Gehres Family's motions for summary judgment, Magnevu's motion for summary judgment, and Bagsby's motion for leave to file his Fourth Amended Complaint and supercede the previous Fourth Amended Complaint. On December 10, 2004, the Magistrate Judge denied Bagsby's renewed motion to dismiss all Gehres' counterclaims, stating, "[a]djudication of the claims and counterclaims made by the parties will be based upon the substantive merits, and not upon innuendo or allegations of criminal conduct." (R. at 1138.)

On February 16, 2005, the Magistrate Judge granted Gehres's motion for summary judgment, finding that as to Bagsby's declaratory-relief claim, the judgment entered by the Missouri Circuit Court on July 24, 2001, was not controlling on the issue of the ownership of the funds because the judgment was reversed on appeal and the case dismissed. With respect to Bagsby's conversion claim, the Magistrate Judge, applying California law, found that the undisputed factual evidence showed that Bagsby unconditionally transferred the money to Gehres, and that "Bagsby failed to proffer sufficient evidence that Defendant Gehres obtained the funds by 'wrongfully exercis[ing] dominion over the property of another,'" noting for example that the $354,500.00 check was made payable to Gehres as the sole payee with no conditional language. (R. at 1316.) The Magistrate Judge also rejected Bagsby's argument that the divorce decree established ownership of the funds, finding that once the divorce was final and the parties began to reconcile, Bagsby transferred the money to Gehres of his own volition.

Finally, in an alternative analysis with respect to the $354,500.00, the Magistrate Judge found that even if Bagsby himself had deposited the funds into the Smith Barney account instead of Gehres: 1) Gehres had the right under California law to withdraw the funds from the account, and 2) at the moment of withdrawal, ownership of any funds to which she would not have had the right on a proportional basis, transferred to her as a gift under *Lee v. Yang*, 3 Cal. Rptr. 3d 819 (Ct. App. 2003) and the California Court of Appeal's interpretation of the California Multiple-Party Accounts Law ("CAMPAL"). The Magistrate Judge found that Gehres would be entitled to summary judgment on the conversion claim if she had a right of withdrawal under the terms of the Smith

8

Barney account and there was not a sufficient evidentiary dispute that she was under any separate legal obligation that restricted the right of withdrawal. Noting that Bagsby "has pointed to no record evidence of an agreement that created a legal obligation separate from the account documents which restricted [] Genres's right to withdraw or use the funds," and that the terms of the account itself provided that either Bagsby or Genres had the full power and authority to withdraw monies, individually or jointly, the Magistrate Judge granted summary judgment in Genres's favor. (R. at 1322.)

Finding Bagsby's claims against the Genres Family to be derivative of the claims against Genres, the Magistrate Judge also granted the Genres Family's motion for summary judgment. The Magistrate Judge granted Magnevu's motion for summary judgment on Bagsby's negligent misrepresentation claim,[8] finding it was unsupported by fact or law. The Magistrate Judge denied Bagsby leave to file his Fourth Amended Complaint on the basis that because the proposed causes of action and defendants Bagsby sought to add to the case were derivative of the meritless conversion claim against Genres, the amendments were futile.

## II. THE MOTIONS FOR SUMMARY JUDGMENT

### A.    Standard of Review

We review a grant of summary judgment de novo. *Bell v. United States*, 355 F.3d 387, 391 (6th Cir. 2004); *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 463 (6th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if a reasonable jury could return a verdict for the non-movant. *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We view the facts and any inferences drawn therefrom in the light most

---

[8] Bagsby maintained that Magnevu was liable for negligent misrepresentation because he was led to believe that Gehres would not seek compensation for the legal services she performed for Bagsby on the Kilbury case, while employed by Magnevu, during Magnevu's business hours and with the acquiescence of Magnevu's CEO. Bagsby claimed he was damaged when, as one of her theories of defense to conversion, Genres asserted that she was entitled to portions of the Kilbury fees for this work.

favorable to the non-movant, in this case, Bagsby. *Bell*, 355 F.3d at 392.

**B.      Gehres's and  The Genres Family's Motions for Summary Judgment**

Bagsby maintains the Missouri Circuit Court judgment in his favor is dispositive on the issue of his ownership of the funds.  As such, he argues he is entitled to declaratory relief against Genres, the Genres Family and Schnelz.

Bagsby also argues that his claims for conversion against Genres, the Genres Family, and Schnelz, are dispositively controlled by the divorce decree incorporating the separation agreement, which provided separately to each party any interest in any pending or concluded law practice or case, in which he or she was involved during the marriage.  As the money Bagsby wired or transferred to Genres was from his attorney fees from the Kilbury case, undisputedly pending during their marriage, Bagsby asserts that Genres had no legal title to the money, thus her subsequent withdrawal and use of the money was conversion.

Alternatively, he argues that she induced him to transfer the funds to her by fraudulently representing that she would use the funds to purchase a residence and open a law practice with him. Genres argues that she had legal title to the $83,000.00 transferred directly to her personal checking account and the $354,500.00 Bagsby paid her by check as there were no conditions or restrictions on her ownership of the money.  She has also asserted that Bagsby promised to pay her half of the Kilbury fees for work that she did before, during, and after their marriage.

**1.      *Declaratory Relief***

"A federal diversity court is required to accord all the *res judicata* effects that a judgment entered in another state would command as a matter of full faith and credit in the courts of any other state."  18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4472 (2d ed. 2002); *see also* Restatement of the Law, Second, Judgments § 86.  Under Missouri law, when a judgment has been vacated, reversed, or set aside on appeal, it is deprived of conclusive effect as *res judicata* or collateral estoppel.  *State v. Nunley,* 923 S.W.2d 911, 922 (Mo. 1996) (citing *Ogle v. Guardsman Ins. Co.*, 701 S.W.2d 469, 471 (Mo. Ct. App. 1985)); *Robin Farms, Inc. v. Beeler*, 991 S.W.2d 182, 185 (Mo. Ct. App. 1999).

Bagsby cannot rely on the Missouri Circuit Court's judgment in his favor to determine the issue of the ownership of the funds because that judgment was subsequently vacated on appeal and

10

is not a final judgment under Missouri law. The judgment has no conclusive effect as *res judicata* or collateral estoppel. Accordingly, the district court properly granted summary judgment in Gehres's and the Genres Family's favor on Bagsby's declaratory relief claim.

### 2.    *Conversion*

Conversion under California law[9] is the "wrongful exercise of dominion over the property of another." The district court's analysis focused on whether Genres "committed a 'wrongful act' which violated any ownership right [Bagsby] may have had over the funds at issue." (R. at 1313.)

With respect to the Magistrate Judge's analysis of his conversion claim, Bagsby argues that the court erred in applying *Lee v. Yang* and CAMPAL to these facts for three reasons: a) the plaintiff in *Lee* had not alleged that the purpose of his joint account was for a business, partnership, or joint enterprise as Bagsby has; b) no separate legal obligation, such as the divorce decree and separation agreement in this case, governed the ownership of the funds in *Lee*; and, c) the plaintiff in *Lee* did not allege fraud or detrimental reliance induced him to transfer the funds into the joint account. Bagsby argues that CAMPAL "specifically excludes accounts 'established for deposit of funds of a partnership, joint venture, or other association for business purposes,' and for 'fiduciary or trust account where the relationship is established other than by deposit agreement.'" (Bagsby Br. 26.) And, he asserts that Gehres's own testimony shows that the account was to fund a partnership to practice law. Additionally, he argues that the Uniform Partnership Act applies in the absence of a written agreement, creating a fiduciary duty among the partners, which Genres breached.

Genres maintains that Bagsby "voluntarily issued an unconditional and unrestricted check in the amount of $354,500 made payable to Ms. Genres . . . [and] had $83,000 wire transferred to [her] personal checking account[.]" (Genres Br. 14.) She argues that the voluntary nature of these transfers established her right to the funds, of which there could accordingly be no conversion. Genres also alleges that the joint account agreement gave either party the unrestricted right to

_____

[9]

Applying California's choice of law principles because this case had been transferred from the Southern District of California under 28 U.S.C. § 1404(a) for convenience purposes, the Magistrate Judge found California had the predominant interest in having its substantive laws on conversion and multi-party financial accounts govern the dispute. The Smith Barney account was opened in California, the alleged wrongful withdrawals occurred in California, and Bagsby initially chose to file his case in California. Bagsby has not argued that this was erroneous; we agree.

11

withdraw funds from the account, and the funds she withdrew were exactly the amount she deposited. Genres argues that Bagsby has not presented any evidence that the funds he transferred to her were partnership funds or were deposited into a partnership account. Genres argues that she was paid the funds for work performed before, during, and after their marriage.

As to the Magistrate Judge's alternative "gift" analysis, Genres notes that the funds may pass as a gift if there is no independent legal obligation requiring the transferee to account for the proceeds. She contends that the divorce decree does not impose an independent legal obligation on her requiring her to account for the funds because Bagsby voluntarily transferred those funds to her. The Genres Family also argues that Genres had ownership of the $354,500.00 check when Bagsby issued it to her because under California commercial law a check is a negotiable instrument which is an unconditional promise or order to pay a fixed amount of money, if it is payable on demand and does not have any other conditional language. The Genres Family notes under CAMPAL, a party's power of withdrawal is governed by the terms of the account itself, and here, the Smith Barney account imposed no restrictions on Gehres's right to withdraw the funds. The Genres Family maintains that even if a separate agreement bore upon Gehres's right to withdraw the funds from the account, it does not factor into this case because she was still entitled to withdraw her net contribution of $354,500.00. The Genres Family argues that Bagsby did not establish a material issue of fact as to whether he and Genres established a partnership, and therefore CAMPAL would not govern the account because the Smith Barney account was not a partnership account. Finally, the Genres Family maintains that the Divorce Decree is not dispositive of the ownership of the funds.

Under California law,[10] the elements of conversion are: 1) the plaintiff's ownership or right to possession of the property; 2) the defendant's conversion by a wrongful act or disposition of property rights; and, 3) damages. *Burlesci v. Petersen*, 80 Cal. Rptr. 2d 704 (Ct. App. 1998).

Initially, we find that Bagsby's reliance on the divorce decree as dispositive of the issue of

---

[10] As a preliminary matter, the parties do not raise the application of California law as an issue for review, although Gehres does note that the elements of conversion under Michigan law are the same as that under California law. Because neither party has raised the issue, we decline to address it. *Hajdari v. Gonzales*, 186 Fed. Appx. 565, 568 n.2 (6th Cir. 2006) (citing *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001)).

12

the ownership of the funds is misplaced. This is not a situation where, after the entry of the decree, Bagsby received the fees from the Kilbury case and then Genres sued him for breach of contract, unjust enrichment, or quantum meruit, claiming that she earned part of the fees for work she performed on the Kilbury case during the marriage. On the contrary, Bagsby transferred approximately half of the funds he received for the Kilbury case to Genres "voluntarily." While the parties dispute why he did this–Bagsby claims it was to fund their law partnership and to purchase a home together, and Genres claims it was to compensate her for her work on the Kilbury case–he clearly made the decision independent of and subsequent to the decree. The divorce decree does not govern the ownership of the allegedly converted fees.

As to the ownership element of the conversion claim, the district court found that the "undisputed factual evidence demonstrates that Plaintiff *unconditionally* transferred the amounts of $83,000.00 and $354,500.00 directly to [] Genres." (R. at 1316) (emphasis added.)

The record, however, is replete with evidence that Bagsby intended to place specific conditions on both of the transfers. According to Bagsby, the $83,000.00 was to be used in part for the down payment on a home and in part for the purchase of a computer, printer, and fax machine for the law practice, and the $354,500.00 was to be used to further fund their law practice from a restricted account. Bagsby vouches for this in his affidavit, stating, "[b]etween June and August of 1999 Defendant Tina Genres and I agreed to begin a law practice in the states of California, Missouri and Colorado." (R. at 849.) He further avers that he and Genres

> agreed to purchase a residence in the state of California and that the down payment would be $80,000. [] Genres also needed a computer, printer and fax machine for the law practice and requested $2,000.00 for that purpose. An additional $1,000.00 was requested by her to cover her rent for the month of August because she was beginning to work part-time at Magnevu Corporation and devoting the rest of the time to establishing the law practice. Eighty-three thousand dollars was sent to [] Genres from the Kilbury fees for these purposes.

(R. at 849.)

Bagsby then avers that he forwarded Genres a $354,500.00 check "to establish a joint-restricted account for the law practice." (R. at 849.) Incidental to the allegation that the account was a restricted account, Bagsby contends "Genres [] established a secret personal identification number

13

(PIN) which would allow her to withdraw funds from the joint restricted account by herself." (R. at 850.) Bagsby further submitted testimony from the third party to the alleged law partnership, David Angle, who stated he discussed becoming partners with Bagsby in the summer of 1999, and that Genres was to be included in this practice. Angle testified that the Kilbury fees were to be the source of the funding for the partnership.

Several of Gehres's own statements lend support to Bagsby's contentions, namely that she "began searching for a home in California," and that she would begin working part-time so that she could spend more time, "locating a home to purchase for the parties' to live . . . and explor[ing] the parties' options for practicing law in California." (R. at 544.) Genres cites to spreadsheets she prepared in anticipation of receiving her fifty percent of the Kilbury fees, but contained within the spreadsheets are also figures estimating the monthly cost or expenses of the law practice.

Whether the parties agreed to practice law together, the nature of any agreement, and most importantly, the agreed use or restrictions on the use of the funds in question are hotly contested by the parties. Consequently, whether the transfers were "unconditional" is an issue of disputed fact and precludes summary judgment for Genres and the Genres Family on Bagsby's conversion claim. The Magistrate Judge, in finding Bagsby's transfers unconditional and voluntary, effectively found that Bagsby transferred ownership of the funds through consent, such that no subsequent wrongful act could convert them. California, however, recognizes that the ownership element in the tort of conversion may be proved through consent obtained by fraud. *Elliott v. Federated Fruit and Vegetable Growers, Inc*., 291 P. 681, 683 (Cal. Ct. App. 1930); *Freedman v. Queen Ins. Co. of America*, 364 P.2d 245, 246-47 (Cal. 1961). Accordingly, the Magistrate Judge erred in not considering whether the "voluntary" nature of Bagsby's transfers was based on Gehres's alleged fraud or misrepresentations. As noted above, there is certainly a disputed issue of fact as to the purported purpose of the transfers.

Turning to the district court's alternate analysis under *Lee*, we find that the district court failed to properly account for one crucial point made by the California Court of Appeals. Before determining whether Lee had a right to reimbursement of the fees from Yang, the California Court of Appeals first analyzed whether Yang had a right to withdraw the funds. *Lee*, 3 Cal. Rptr. 3d at 825-26. The trial court in *Lee* determined that Lee "failed to establish by a preponderance of the

14

evidence that the parties had a *legally enforceable oral agreement* that *restricted* Janet [Yang] or her right to withdraw the funds." *Id*. at 825 (emphasis in original). Lee sued Yang for, among other things, conversion, after she withdrew funds exceeding the amount she deposited into their joint account. *Id*. at 822. Lee maintained that Yang was added to his account "for convenience purposes" and that she would not make withdrawals except for wedding and household items; Yang argued that "she had full access to all the money and could use it for any purpose." *Id*. at 825.

The Court of Appeals upheld the trial court's determination and found on that basis, Lee "had no basis to challenge Janet's withdrawals." *Id*. at 826. The court found "the nature of the transaction" to be determinative, such that "the withdrawal of funds under the terms of a joint account by one possessing a present right of withdrawal, coupled with the *absence of a agreement* between the parties or *other legal obligation* restricting a party's right to withdraw or use the funds or otherwise account for the proceeds." *Id*. at 828 (emphasis added). The court summarized: "substantial evidence sustains the trial court's finding that there was no agreement between the parties restricting Janet or the amount she could withdraw from the account . . . . [t]he inescapable inference is that likewise there was no restriction on the use of the withdrawn funds and hence no legal obligation to account for or return them." *Id*.

Thus, a "legally enforceable oral agreement" can restrict a party's right of withdrawal despite the terms of the account itself, which is what Bagsby claims here. As discussed, *supra*, Bagsby has made allegations, and provided factual evidence sufficient to withstand a motion for summary judgment, that he had a legally enforceable agreement, whether it is characterized as a partnership or a preliminary agreement to begin a law partnership.[11] Under *Lee*, this would restrict Gehres's

---

[11]

Under California law, a partnership is the agreement of two or more to carry on business for a profit. Cal. Corp. Code. § 16202 (2006). A partnership agreement does not have to be in writing, and a partnership may be formed whether or not the parties intend to form one, as intent may be implied. *Greene v. Brooks*, 45 Cal. Rptr. 99, 102 (Ct. App. 1965). Additionally, when there is a possibility that an agreement can be performed in one year or where parties have partially performed on an oral partnership agreement, the fact that the agreement is not in writing does not violate the statute of frauds. *MacMorris Sales Corp. v. Kozak*, 69 Cal. Rptr. 719, 725-26 (Ct. App. 1962); *Landes Construction Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1370 n.1 (9th Cir. 1987) (applying California law). On this basis, it appears that Bagsby and Genres could have had an enforceable agreement. Under *Lee*, if they did have such an agreement, Genres could be liable for

15

right to withdraw the funds from the account.

Accordingly, the Magistrate Judge erred in granting summary judgment to Genres on Bagsby's conversion claim. Further, because Bagsby's conversion claims against the Genres Family are derivative of Gehres's liability for conversion, the grant of summary judgment to the Genres Family on Bagsby's conversion claim was also in error.

### C. Schnelz's Motion for Summary Judgment

#### 1. Declaratory Relief

Bagsby argues that at the time Schnelz filed its motion for summary judgment, the Missouri Circuit Court's judgment finding in his favor was dispositive on the issues of whether there was a partnership, unjust enrichment, and detrimental reliance. Bagsby argues the Magistrate Judge's privity analysis was irrelevant to the application of the Missouri Circuit Court judgment because the judgment determined ownership of the funds in the Smith Barney account, and did so in Bagsby's favor. He insists that if the funds were for a law partnership, as the Missouri Circuit Court determined they were, Schnelz is liable for conversion of the funds from that account.

Schnelz counters that by its terms the Missouri Circuit Court's judgment did not apply to it, that the judgment was not in existence when Genres paid Schnelz so Schnelz could not have violated it, and that it was not in privity with Genres with respect to the judgment, such that it could have violated the judgment.

As discussed, *supra*, this judgment, since vacated by the Missouri Court of Appeals, has no preclusive effect on the issue of the ownership of the funds as to any party. Further, it is undisputed that Schnelz was not a party to the Missouri Circuit Court judgment. The Magistrate Judge correctly noted that under constitutional due process standards, Schnelz would have had to have been in privity with Genres in order to be bound by the judgment. The Missouri Circuit Court noted that Bagsby "satisfied equitable tracing" on the funds Genres paid to Schnelz, but Schnelz had no way to refute this as its interests were not represented in the action, by either itself or by Genres. *See Richards v. Jefferson County, Alabama*, 517 U.S. 793, 797 n.4, 798 (1996). The district court properly granted Schnelz's motion for summary judgment on Bagsby's declaratory relief claim.

---

conversion for the withdrawal of the funds from the Smith Barney account.

16

### 2. *Conversion*

Bagsby argues that under California law conversion is a strict liability tort, and thus regardless of whether or not Schnelz knew or believed the funds were converted by Genres, it may nevertheless be liable for accepting them from her.

Schnelz's first argument with respect to the conversion claim is that Genres had the right to withdraw the funds from the joint account and is not liable for conversion, hence, Schnelz also cannot be liable for conversion. This argument is unavailing because there is a genuine issue of fact regarding Geheres's right to withdraw funds from the joint account for the reasons discussed, *supra*.

Schnelz next contends that its acts were not "wrongful" in that it only received payment for legal services rendered. Schnelz contends that Bagsby put the money in a joint tenant account at his own risk. Again, as discussed, *supra*, there are material facts in dispute as to whether there were restrictions on the ability to withdraw funds from the account. Schnelz alleges that because there was no written partnership agreement, there were no restrictions on Gehres's right to withdraw the funds, and as such no restrictions on Schnelz accepting them. The Court has also rejected this argument, *supra*. Finally, Schnelz maintains that because there was no written partnership agreement, they were not on notice as to the possibility of the funds being restricted, or converted.

Conversion is a strict liability tort in California. *Oakdale Vill. Group v. Fong*, 50 Cal. Rptr. 2d 810, 812 (Ct. App. 1996) (citing *Moore v. Regents of Univ. of California*, 271 Cal. Rptr. 146, 144 (1990)). Thus, ordinarily good faith, lack of knowledge, and motive are immaterial to liability. *Id*. However, it is a "general rule that an innocent purchaser for value and without notice, actual or constructive, that his vendor had secured the goods by a fraudulent purchase, is not liable for conversion." *Id*. at 814. That is, a bona fide purchaser, one who obtains the converted property for payment of value, in good faith and without actual or constructive notice of another's rights, cannot be found liable for conversion. *Id*. at 815.

In *Oakdale*, the court found that the defendant had constructive notice of the partnership. *Id*. at 815-16. The court noted, "[t]his constructive knowledge of other partners involved in the transaction provided [the defendant] with knowledge of facts and circumstances to put a prudent purchaser on inquiry . . . [t]his knowledge defeats any claim that he was an innocent purchaser. *Id*. at 816.

Schnelz plainly stated in its motion for summary judgment it had, "no doubt . . . the funds were 'in dispute' when they received their legal fees–the dispute was the purpose they were retained to represent Genres[.]" (R. at 319.)  The attorneys who worked with Genres and other defendants, Bryan Monaghan and Kurt Schnelz, both averred, however, that they had no knowledge that the monies Genres paid Schnelz came from the allegedly converted funds.  Under *Oakdale*, there is a genuine issue of material fact as to whether Schnelz had constructive notice that Gehres's funds were converted from Bagsby in contravention of a partnership, or other, agreement.  The district court erred in granting Schnelz's motion for summary judgment on Bagsby's conversion claim.

### 3. *Schnelz's Motion for Sanctions*

Schnelz moved for sanctions, attorneys' fees, and costs against Bagsby under Sixth Circuit Rule 30(m) and Rule 30 of the Federal Rules of Appellate Procedure on the grounds that the Joint Appendix Bagsby submitted was "woefully deficient," thereby causing Schnelz to submit a Supplemental Appendix at a cost of over $5,000.00.

Federal Rule of Appellate Procedure 30(a)(1) states that the "appellant must prepare and file an appendix to the briefs containing: the relevant docket entries in the proceeding below; the relevant portions of the pleadings, charge, findings, or opinion; the judgment, order, or decision in question; and other parts of the record to which the parties wish to direct the court's attention."  The rule continues that all parties are "encouraged to agree on the contents of the appendix," however, if the parties cannot so agree, the appellant must, within ten days after the record is filed, "serve on appellee a designation of the parts of the record the appellant intends to include in the appendix," and the appellee may, within ten days after receiving the designation "serve on the appellant a designation of additional parts to which it wishes to direct the court's attention."  The rule advises that the "appellant must include the [appellee's] designated parts in the appendix."  With respect to costs, "[i]f the appellant considers parts of the record designated by the appellee to be unnecessary, the appellant may advise the appellee, who must then advance the cost of including those parts."

Sixth Circuit Rule 30 states: "appellant shall file and serve as an addendum to the appellant's brief a designation of those parts of the record to be included in the joint appendix . . . . [t]he appellee shall file and serve as an addendum to the appellee's brief a cross-designation setting forth any parts of the record the appellee wants to have included in the joint appendix that do not appear

in the appellant's designation[.]" The appellant "has the responsibility to prepare the joint appendix and shall serve and file it not later than 21 days after the filing of the appellee's 'proof' brief." Finally, "any counsel who so complicates the proceedings in the case by unreasonably and vexatiously failing to comply with the requirements of this local rule may be required by this Court to satisfy personally any excess costs, pursuant to 28 U.S.C. § 1927, and may be subject to disciplinary sanctions."

Schnelz argues that it submitted its Proof Brief with its Joint Appendix Designations "at the designated time," and that Bagsby's Joint Appendix was "woefully deficient" because it did not contain several documents that were listed in Appellees' Joint Appendix Designations. Schnelz asserts that its counsel contacted Bagsby's counsel regarding the deficiencies, and also contacted officials with the Sixth Circuit regarding Bagsby's alleged refusal to correct the Joint Appendix. In a letter dated December 22, 2005, Schnelz's counsel communicated its "serious objections" to the Joint Appendix and requested that Bagsby file a revised Joint Appendix to incorporate all documents requested by the appellees no later than December 28, 2005, the failure of which would result in Schnelz filing a motion for costs. Bagsby's counsel responded to the December 22, 2005, in a letter dated December 28, 2005, which stated that Bagsby did file a Revised Joint Appendix that was "accepted" by the Court of Appeals and that in a memorandum dated December 2, 2005, the Court of Appeals advised counsel for all appellees to file a "supplemental appendix" no later than January 12, 2006. Schnelz contends that the purpose of this memorandum regarding appellees filing a supplemental appendix was Bagsby's very failure to include the requested documents in the joint appendix in the first place. Schnelz maintains that it spent $5,172.29 in costs and attorneys' fees to submit the supplemental appendix.

The memoranda from Mr. Roy Ford, this Court's Case Manager, filed on December 2, 2005, states that the briefing schedule for this appeal was reset either *sua sponte* by the clerk's office or in response to a motion from a party. Per the memorandum, the appellees were instructed by the Court to file a supplemental appendix for all documents still outstanding "correctly designated" by appellees.

Bagsby contends that the original briefing schedule for this appeal required him to submit the Joint Appendix no later than November 10, 2005. To "avoid the very complaint which [Schnelz]

19

now makes," Bagsby's counsel sent appellees' counsel a letter on September 22, 2005, requesting that counsel provide the exact documents to be included in the Joint Appendix so there would be no risk of error or an inadvertent omission of documents. Bagsby maintains that most of the appellees did this, but Schnelz's counsel did not. Bagsby states that after submitting the original Joint Appendix on November 10, 2005, he was directed to submit a revised appendix because the original did not comply with the local rules. He maintains that before December 1, "2000,"[12] he submitted a revised Joint Appendix. Bagsby contends that after he filed this second Joint Appendix, Genres requested additional documents be included which were not the subject of this appeal, to which Mr. Ford issued his memorandum instructing the appellees to file a supplemental appendix. Bagsby states that on December 22, 2005, counsel for Schnelz requested that his counsel "submit another Joint Appendix containing a Motion inadvertently omitted from the Joint Appendix."

Both Schenlz's motion and Bagsby's response lack sufficient clarity to be cognizable as to which party omitted what from which version of the Joint Appendix. It appears that Bagsby attempted to comply with Federal Rule of Appellate Procedure 30 and this Court's local rules by including all requested documents in the original Joint Appendix. It also appears that Schnelz was not satisfied with this appendix, nor with the subsequent revised version, however, it is utterly unclear from its motion and attendant exhibits whether Schnelz submitted these documents with its Proof Brief or otherwise indicated its purported reliance upon them prior to Bagsby's submission of the original Joint Appendix on November 10, or the revised Joint Appendix prior to December 1. Schnelz's motion is, accordingly, denied.

### D. Magnevu's Motion for Summary Judgment

#### 1. *Analysis*

Bagsby claimed negligent misrepresentation against Magnevu. Bagsby alleges that Genres performed four hours of work on the Kilbury settlement, after the divorce was final, "while physically working at the office of Defendant Magnevu Corporation, during its normal business hours, and while receiving her employee pay for conducting Magnevu business." (R. at 222.) He further alleges that Genres had the "knowledge, consent, approval, ratification and acquiescence of

---

[12]Presumably, Bagsby means December 1, 2005.

20

the CEO of Magnevu Corporation" to do this work. (R. at 222.) Bagsby maintains that Genres, "as an agent of Magnevu Corporation," represented that she would not seek compensation for her services. (R. at 223.) Bagsby alleged he was damaged in the amount of $450,000.00 when Genres premised a theory of defense to his conversion claim on the fact that she was entitled to compensation for her work on the Kilbury case.

Magnevu argued that Genres did not convert the funds, and even if she had, she did not transfer any of those funds to Magnevu. Magnevu maintains that Gehres's withdrawal of monies from the joint account was done for her personal benefit, not for any reason related to her employment with Magnevu. Magnevu also contends that Bagsby has failed to show that Gehres's employment with Magnevu was material to the establishment of the joint account, or that her employment induced Bagsby to do anything. Magnevu argues that Bagsby's appeal is frivolous and requests sanctions under Fed. R. App. P. 38 and 28 U.S.C. §1927.

Under California law, negligent misrepresentation is a form of fraud. *Small v. Fritz Co., Inc.*, 132 Cal. Rptr. 2d 490, 494 (2003). The elements of fraud are: a) a misrepresentation; b) knowledge of falsity; c) intent to defraud; d) justifiable reliance; and, e) damages. *Id*. Negligent misrepresentation, however, does not require knowledge of the falsity, or scienter, to defraud. *Id*.

Although California law provides that principals may be liable for the negligence of their agents, the agents' negligence or wrongful acts must be committed in "the transaction of the business of the agency[.]" Cal. Civil Code § 2338 (2006). Gehres's actions undisputedly were not on behalf of Magnevu, or in the transaction of Magnevu's business. The Magistrate Judge did not err in granting summary judgment in Magnevu's favor.

### 2. *Request for Sanctions*

Magnevu requests sanctions on the grounds that Bagsby's appeal is frivolous due to the absence of facts supporting Magnevu's liability and that the allegations that Bagsby made against it were not made on Bagsby's personal knowledge. Magnevu argues that Bagsby and his counsel violated 28 U.S.C. § 1927, Fed. R. Civ. P. 11(b), and Fed. R. App. P. 38, which requires them to make a reasonable inquiry as to whether the facts of his negligent misrepresentation claim would support an appeal. Magnevu inserted this argument into its Brief and has not moved separately for sanctions.

21

Title 28 U.S.C. § 1927 provides:

[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Rule 38 of the Federal Rules of Appellate Procedure provides that if a court of appeals "determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." The Advisory Committee Notes make clear that a statement inserted into an appellee's brief requesting sanctions does not constitute sufficient notice, but rather the appellee must file a separate motion for sanctions. The Court, however, may give notice and afford the appellant the opportunity to respond if it determines the appeal is frivolous. An appeal is frivolous when an appellant "essentially had no reasonable expectation of altering the district court's judgment based on law or fact." *Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 677 (6th Cir. 1999). Though Bagsby's appeal of the grant of summary judgment to Magnevu is meritless, given the sparseness of the district court's analysis of Bagsby's negligent misrepresentation claim against Magnevu, we decline to impose sanctions under Fed. R. App. P. 38 or 28 U.S.C. § 1927.

## IV. BAGSBY'S MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

Bagsby maintains that the causes of action in his Fourth Amended Complaint, including detrimental reliance, fraud, and breach of contract, "speak to [the] very issue" of why he transferred funds from Missouri to California. (Bagsby Br. 28.) Additionally, Bagsby argues that Genres premised her right to the funds on four hours of legal and accounting work she performed for Bagsby in the Kilbury case after the divorce and while employed by Magnevu. His unjust enrichment claim seeks to remedy the disparity in the work Genres performed relative to her hefty compensation. Bagsby maintains that these claims are not futile as they are not derivative of the conversion claim, but rather "determine why the funds were transferred and defeat the very claim of Tina Genres that she 'earned' $454,000.00." (Bagsby Br. 29.)

Genres argues that Bagsby's request for leave to amend is not due to newly discovered facts, and that he waived his right to amend by "vexatiously split[ting] his causes of action between the

federal court and the Missouri state courts." (Genres Br. 26-27.)  The Genres Family argues that Bagsby unduly delayed in attempting to file his Fourth Amended Complaint five years into the litigation, and that if leave were granted, it would prejudice them.  Finally, Magnevu argues that Bagsby's quantum meruit claim against it is insufficient as Bagsby has not "pled any conduct by Magnevu which would have created an implied contract," much less any conduct showing that Magnevu breached any agreement.  (Magnevu Br. 12-13.)

### A.     Standard of Review

A district court is not required to grant leave to amend where the amendment would be futile, or in other words would not be able to survive a motion to dismiss.  *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  "Where a district court draws a legal conclusion that amendment would be futile, that conclusion is reviewed de novo."  *Id*. (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).

### B.     Futility of proposed amendments

The Fed. Civ. R. P. 12(b)(6) standard  is "to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything in the alleged complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  "[T]he complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief."  *Cione v. Gorr*, 843 F. Supp. 1199, 1200 (6th Cir. 1994) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Applying this standard to Bagsby's amendments, we find that the claims Bagsby sought to add are not futile as a matter of law.  These additional claims are different theories of Gehres's possible liability for breaching an alleged partnership, business agreement, contract, or quasi-contract.  It cannot be said, as a matter of law, that Bagsby can prove no set of facts in support of his claims for: declaratory relief,[13] defalcation/breach of fiduciary duty, detrimental reliance/promissory estoppel, breach of oral and written agreements, restitution, unjust enrichment, conversion, civil

---

[13]

Bagsby's basis for declaratory relief in his Fourth Amended Complaint is different than that in the Third in asserting that Genres is not entitled to the funds under attorney fee-splitting laws.

23

conspiracy, fraud,[14] money had and received, violation of the Uniform Fraudulent Conveyances Act, constructive trust, and accounting.

Bagsby's claims against Magnevu for fraud, negligent misrepresentation, and quantum meruit claim, however, are futile under Civ. Rule 12(b)(6). Bagsby's claims for negligent misrepresentation and fraud against Magnevu are legally and factually untenable, as explained, *supra*, and it would therefore be futile to allow him to amend his complaint to add those claims.

Under California law, an action for quantum meruit lies when the law implies a "promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." *Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453, 458 (2004) (citing *Long v. Rumsey*, 12 Cal.2d 334, 342 (1938)). To recover on quantum meruit, a party must demonstrate that the services were given, "'under some understanding or expectation of both parties that compensation therefore was to be made.'" *Id.* (citing *Estate of Mumford*, 173 Cal. 511, 523 (1916)). Bagsby alleges in his Fourth Amended Complaint that he did not submit a bill to Magnevu for the $8,000.00 worth of services he allegedly performed related to its involuntary bankruptcy and other issues, and that Genres represented to him that their services performed on each other's behalf "were a mutual benefit with no compensation to be sought or asserted by either party." (R. at 719.) Here, it is clear from Bagsby's own allegations that he did not submit a bill to Magnevu for the $8,000.00 worth of legal services he allegedly performed on its behalf because he had an understanding with Genres that these services were to be performed without compensation. Therefore, these allegations are not sufficient to state a claim for quantum meruit under California law, as Bagsby cannot show that his services were given with an expectation that compensation was to be made.

### C.      Undue delay, prejudice to Appellees

Delay alone is usually an insufficient reason to deny a motion for leave to amend. *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (citing *Sec. Ins. Co. v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995)). Undue delay, prejudice to the defendant, or bad faith, may warrant the denial of a motion for leave to amend. *Id.* (citing *Foman*, 371 U.S. at 182). In *Morse*,

---

[14]

Bagsby includes Magnevu in his fraud claim, and for reasons explained, *infra*, his fraud claim as it applies to Magnevu is futile.

this Court vacated the district court's order denying the plaintiffs' motion for leave to amend, despite the fact that the plaintiffs did not file their second amended complaint until after an entry of final judgment. *Id*. at 799. The Court "shared the district court's frustration with plaintiffs' apparent 'cat and mouse' class action gamesmanship," however, "could not conclude that [the plaintiffs] acted in bad faith in failing to amend their complaint at an earlier date." *Id*. at 800.

Although it has been several years since the original federal action was filed, Bagsby filed his motion to amend shortly after the district court lifted a stay on the case initially imposed because of Gerhes's bankruptcy filing. Bagsby's motion was also filed shortly after his Missouri Circuit Court judgment against Genres was reversed by the Missouri Court of Appeals. Additionally, Bagsby filed his motion for leave before the Genres Family filed their motion for summary judgment on the Third Amended Complaint. And, there is no surprise element to Bagsby's amended claims; as the Genres Family has recognized, "Plaintiff had previously plead all of the claims against the Genres Family defendants which Plaintiff sought to reassert in the Fourth Amended Complaint." (Genres Family Br. 26.)

In the case at hand, while it was Bagsby's choice to file suit in Missouri and to drop his claims from his Third Amended Complaint upon obtaining judgment in the Missouri Circuit Court, it would be extraordinarily prejudicial to him not to grant him leave to amend after the reversal of the Missouri Circuit Court judgment. Accordingly, the district court erred in denying Bagsby's motion for leave to file his Fourth Amended Complaint, with the exception of the negligent misrepresentation, fraud, and quantum meruit claims against Magnevu.

## V. BAGSBY'S RENEWED MOTION TO DISMISS GENRES' COUNTERCLAIMS

Bagsby argues that the district court should have granted his motion to dismiss Genres' counterclaims because she did not disclose these claims as the debtor in her bankruptcy proceeding. Genres maintains that this issue is improperly before the Court because the order denying Bagsby's motion to strike Genres' counterclaims is not appealable under 28 U.S.C. § 1292(b).

Title 28 U.S.C. § 1292(b) regarding interlocutory appeals provides when a district judge is:

> under the opinion that such order involves a controlling question of law as to which there is substantial grounds for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing such an order.

25

From such an order, the courts of appeals may permit an appeal to be taken. *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002) (citing 28 U.S.C. § 1292(b)).

Undisputedly, the Magistrate Judge entered a separate order denying Bagsby's motion to dismiss Genres' counterclaims, which lacked the requisite language or analysis required under 28 U.S.C. § 1292(b). In stark contrast, in his order certifying his memorandum and order granting the defendants summary judgment and denying Bagsby leave to amend his Fourth Complaint, the Magistrate Judge stated that the memorandum opinion and order "involved controlling questions of law and . . . there are substantial grounds for differences of opinion . . . . [and] an immediate appeal would materially advance the ultimate termination of this litigation within the meaning of 28 U.S.C. § 1292(b)." (R. at 1337.) Part of his rationale was that an appeal would terminate Bagsby's claims, "leaving only a set of factually and legally distinguishable counterclaims to be adjudicated." (R. at 1337.)

It does not appear the that district court had any intent to certify Bagsby's motion to dismiss Genres' counterclaims. Accordingly, this argument is not properly before the Court on appeal.

## VI.  CONCLUSION

We **AFFIRM** the district court's grant of summary judgment on Bagsby's declaratory relief claim in favor of Genres, the Genres Family, and Schnelz, and the district court's grant of summary judgment in favor of Magnevu on Bagsby's negligent misrepresentation claim; **REVERSE** the district court's grant of summary judgment to Genres, the Genres Family, and Schnelz on Bagsby's conversion claim; **AFFIRM IN PART** and **REVERSE IN PART** the district court's denial of leave to permit Bagsby to file his Fourth Amended Complaint, and **REMAND** this case to the district court for further proceedings consistent with this Opinion. We find that Bagsby's appeal of the district court's refusal to dismiss Genres' counterclaims is not properly before this Court. We **DENY** Schnelz's motion and Magnevu's request for sanctions, attorneys fees, and costs.